(LOCAL LAW.)

## Shipp *et al.* v. Miller's heirs.

An error in description is not fatal in an entry if it does not mislead a subsequent locator. The following entry, "H. M. enters 1687 acres of land on a treasury warrant, No. 6168, adjoining Chapman *Aston* on the west side, and Israel Christian on the north, beginning at Christian's north west corner, running thence west 200 poles; thence north parallel with Aston's line until an east course to Aston's line will include the quantity," was held valid, although no such entry as that referred to could be found in the name of *Aston*, but the particular description clearly pointed out an entry in the name of Chapman *Austin*, as the one intended, and this, together with Christian's entry, satisfied the *calls* of H. M.'s entry.

It is a general rule that when all the *calls* of an entry cannot be complied with, because some are vague, or repugnant, the latter may be rejected or controlled by other material *calls*, which are consistent and certain. Course and distance yield to known, visible, and definite objects; but they do not yield, unless to *calls* more material and equally certain. Chapman Austin's entry *calling to lie* "on the dividing ridge between Hinkston's fork and the south fork of Licking, beginning two miles north of Harrod's lick, at a large buffalo road, and running about north for quantity," and there being no buffalo road *two miles north of Harrod's lick,* (a place of general notoriety,) it was determined that a call for *a large buffalo road* might be rejected, and the entry supported by the definite call for course and distance.

It is a settled rule that where no other figure is called for in an entry, it is to be surveyed in a square coincident with the cardinal points;

and large enough to contain the given quantity, and that the point of beginning is deemed to be the centre of the base line of such square. Chapman Austin's entry calling to run *about* a north course for quantity, the word "about" is to be rejected, and the land is to run a due north course, having on each side of a due north line, drawn through the centre of the base, an equal moiety.

1817.

Shipp
v.
Miller's
heirs.

The act of Kentucky of 1797, taken in connexion with preceding acts, declaring that entries for land shall become void, if not surveyed before the first day of October, 1798, with a proviso allowing to infants and *femes covert* three years after their several disabilities are removed to complete surveys on their entries; it was held, that if any one or more of the joint owners be under the disability of infancy or coverture, it brings the entry within the saving of the proviso as to all the other owners. Distinction between this statute and a statute of limitations of personal actions.

A *call* for a *spring branch* generally, or for a spring branch *to include a marked tree* at the head of such spring, is not a sufficiently specific *locative call;* and where farther certainty is attempted to be given by a *call* for course and distance, and the course is not exact, and the distance called for is a mile and a half from the place where the object is to be found, the entry is void for uncertainty.

APPEAL from the circuit court for the district of Kentucky.

This cause was argued by Mr. *Talbot,* for the appellant, and by Mr. *Sheffey,* for the appellees.

*March 5th.*

Mr. Justice STORY delivered the opinion of the court.

*March 11th.*

This is a bill in equity brought by the appellees, who are the heirs at law and devisees of Henry Miller, deceased, to be relieved against the claims of the appellants under prior patents to a tract of land, to which the appellees assert a prior equitable title under a prior entry by their ancestor.

On the 11th of December, 1782, the said Henry Miller made the following entry: "Henry Miller enters 1,687 acres of land on a Treasury Warrant, No. 6,168, adjoining Chapman *Aston* on the west side, and Israel Christian on the north, beginning at Christian's northwest corner, running thence west 200 poles, thence north parallel with Aston's line until an east course to Aston's line will include the quantity." Henry Miller died in 1796, and in 1804 this entry was surveyed, and after that time a patent issued thereupon in due form of law. At the time of the death of Miller, and also of the survey of the entry, several of the plaintiffs were under age, and some of them at the commencement of the suit continued to be under age.

There was not, on the 11th of December, 1782, any entry upon record in the entry taker's books in the name of Chapman *Aston*. But there were several in the name of Chapman *Austin*, and several in the name of Isaac Christian. One in the name of Chapman Austin is dated 26th of June, 1780, for 4,000 acres of land lying on Red River, and another in the name of Israel Christian, dated the 5th of December, 1782, for 2,000 acres of land lying on the same river; but there is no proof in the cause that these entries are in the neighbourhood of each other. The entries relied on by the complainants as those referred to in Miller's entry are as follows: "On the 26th of June, 1780, Chapman *Austin* enters 4,000 acres on the dividing ridge between Hinkston's fork and the south fork of Licking, beginning two miles north of Harrod's Lick at a large Buffalo road, and

running about a north course for quantity." "On
the 29th of November, 1782, Israel Christian, as-
signee of Archibald Thompson, enters 200 acres
of land upon a military warrant, No. 193, adjoining
an entry of Chapman Austin, at his southwest corner
on the dividing ridge between Hinkston's and Sto-
ner's fork, two miles north of Harrod's Lick, running
thence west 200 poles, thence north until an east
course to strike Austin's line will include the quan-
tity."

The appellants having the elder grant, the first
question arising in the cause is as to the validity of
the entry of Miller. It is, in the first place, contend-
ed, that it is void, because it contains no sufficient
description of the position of the land, and no speci-
fic reference to any other definite entries to make it
certain. It is, in the next place, contended, that it is
void, because Chapman Austin's entry, on which it
is dependent, is void for uncertainty.

There is certainly a mistake in Miller's entry, as
to the name of *Aston*, and the defect cannot be cured
by considering *Aston* and *Austin* as one name, for
they are not of the same sound. But an error in de-
scription is not fatal in an entry, if it does not mislead a
subsequent locator. Upon searching the entry book
no such name could be found as Chapman Aston; and
if Miller s entry had only called to adjoin Aston,
there would have been great force in the objection.
But it calls also to adjoin Israel Christian's entry on
the north, and to begin at his northwest corner. A
subsequent locator would, therefore, necessarily be
led to examine that entry. On such examination he

could not fail to observe that it calls to adjoin an
entry of Chapman Austin, at his southwest corner,
on the dividing ridge between Hinkston's and
Stoner's fork, two miles north of Harrod's lick.
This specific description would clearly point out the
particular entry to which it refers.  It could be no
other than the entry of Chapman Austin for 4,000
acres, already stated; for that calls for the same
ridge, and to begin at the same distance from Har-
rod's lick.  Two entries would thus be found adjoin-
ing each other, which would, as to position and course,
perfectly satisfy the calls of Miller's entry.  No
other entries could be found which would present
the same coincidences.  A subsequent locator could
not, therefore, doubt that these were the entries
really referred to in Miller's entry, and that Chap-
man *Aston* was a misnomer of Chapman *Austin*.
The entry, then, of Miller, contains, in itself, a suffi-
cient certainty of description, if the entries to which
it refers are valid; for *id certum est quod certum reddi
potest.*

As no objection is alleged against Christian's
entry, all consideration of it may at once be dismiss-
ed.  The validity of the entry of Chapman Austin
remains to be examined.  It calls to lie " on the
dividing ridge between Hinkston's fork and the south
fork of licking, beginning two miles north of Harrod's
lick at a large Buffalo road, and running about north
for quantity."  It is conceded that Harrod's lick was,
at the time of the entry, a place of general notoriety;
and it is proved that there was no Buffalo road two
miles north of that lick.  The nearest Buffalo road

was, at its nearest approach, more than two miles from the same lick, and crossed the ridge at more than three miles distance from it; and a line drawn due north from the lick would not strike that road until after it had crossed the ridge at about four miles distance from the lick. The calls, then, in the entry cannot be completely satisfied in the terms in which they are expressed. The general descriptive call to lie on the dividing ridge, as well as the call for distance, must be rejected, if a buffalo road about four miles north of the lick were to be deemed a sufficient compliance with the call for a large buffalo road; for the whole land would then lie, not *on*, but *beyond* the ridge. Such a construction of the entry would be unreasonable. Is, then, the entry void for repugnancy or uncertainty, or can it be sustained by rejecting the call for a large buffalo road? It is a general rule that when all the calls of an entry cannot be complied with, because some are vague, or repugnant, the latter may be rejected or controlled by other material calls, which are consistent and certain. On this account, course and distance yield to known, visible, and definite objects. But course and distance do not yield unless to calls more material and equally certain. The locative calls in this entry are for a point two miles north of Harrod's Lick, and for a large buffalo road. If we reject the first call, the entry is void for uncertainty, for there is no definite starting point. If we reject the last call, the other is perfectly certain. The general leaning of courts has been to support entries, if it could be done by any reasonable construction.

1817.

Shipp
v.
Miller's
heirs.

The law, indeed, declares, that every entry should contain a description of the land so certain that subsequent locators might be able to ascertain it with precision, and locate the adjoining residuum. But that description is held to be sufficiently certain which, by due diligence, inquiry, and search in the neighbourhood, will enable a locator to find the land. A locator having this entry in his hands, would 'first proceed to Harrod's Lick, as a notorious object which was to direct all his subsequent inquiries. Upon measuring off the two miles north from the lick, he would arrive at a point clearly described in the entry He would find himself very near the dividing ridge between Hinkston's fork and the south fork of Licking, upon which the land is unequivocally declared to lie. But he could find no buffalo road in that direction until after he had crossed the ridge, nor could he find any such road within any reasonable distance in any other direction. Under such circumstances, it is not easy to perceive how he could be misled. Being arrived at a spot, to which he was directed by a definite locative call, which he could not mistake, and by a general call which is perfectly satisfied, he would scarcely be induced to direct it in search of another call, which was not to be found in the neighbourhood, and which, without the first, would be uncertain and indefinite. In the opinion of the court the call for a large buffalo road may be rejected, and the entry of Chapman Austin be supported by the other definite call for course and distance. In this opinion we are the more confirmed by the admission of counsel, that the same

entry has been sustained in the state courts of Kentucky.

Supposing the entry of Chapman Austin to be good, the next inquiry is, whether it is rightly surveyed; for if it is, then Christian's and Miller's entries are, also, rightly surveyed. It is contended that, as no base or figure is given by the entry, the land cannot be laid off in any direction; and if so, neither the survey made by order of the circuit court, nor, indeed, any other survey, can be good. But it is a settled rule, which has been repeatedly recognised by this court, that where no other figure is called for in an entry, it is to be surveyed in a square, coincident with the cardinal points, and large enough to contain the given quantity; and that the point of beginning is to be deemed the centre of the base line of such square. In the present case, a point two miles distant from Harrod's Lick is to be taken as the centre of the base line of a square, to contain the given quantity of land. The entry calls to run *about* a north course for quantity; but, according to the course of decisions in Kentucky, the word, "about," is to be rejected, and the land is to run a due north course, having on each side of a due north line, drawn through the centre of the base, an equal moiety. This is precisely the manner in which the survey was directed to be executed by the court below.

Another objection to the title of the plaintiffs, is, that the survey on Miller's entry was not executed and returned within the time prescribed by law.

The act of 1797, taken in connexion with preceding acts, declares, that entries for land in general shall become void, if not surveyed before the first day of October, 1798; with a proviso, allowing to infants and *femes covert* three years after their several disabilities are removed to complete surveys on their entries. The ancestor of the plaintiffs died in 1796, and some of them then were, and still continue to be, under the disability of infancy. The present entry was not surveyed until 1804.

It is argued, that the proviso does not save any entries, except where all the owners are under the disability of infancy or coverture, at the time when the general limitation takes effect. And, it is likened to the case decided by this court, where a joint personal action was held not to be saved by the disability of one of the plaintiffs, from the operation of the statute of limitations. [*Marsteller v. McLean*, 7 *Cranch*, 156.] It is admitted, that there is some analogy between the cases; but, as they do not arise upon the same statute, a decision in the one furnishes no absolute authority to govern the other. There are, also, differences in the nature and objects of these statutes, which might well justify a different construction. The statute of limitations is emphatically termed a statute of repose; it is made for the purpose of quieting rights, and shutting out stale and fraudulent claims. It has, therefore, always been construed strictly against the plaintiff, and no case has been excepted from its operation, unless within the strict letter or manifest equity of some exception in the act itself. The statutes of Kentucky, allow-

ing further time to owners to survey their entries, is made with a different aspect. It is to save a forfeiture to the government; and acts, imposing forfeitures, are always construed strictly as against the government, and liberally as to the other parties. It is manifest that the act meant to protect the rights of infants and *femes covert* from forfeiture until three years after the disability should be removed. Yet if the argument at bar be correct, their rights are completely gone in all cases where they are not the sole and exclusive owners. Such a construction would materially impair the apparent beneficial intention of the legislature. If, on the other hand, they are authorized in such cases to have their entries surveyed and returned, so as to protect their own joint interest, no reason is perceived why such survey may not be justly held to enure to the benefit of all the other joint owners. The courts of Kentucky have already decided this question; and held, that if any one joint owner be under disability, it brings the entry within the saving of the proviso, as to all the other owners. [*Kennedy v. Bruice,* 2 *Bibb's Rep.* 371.] This is a decision upon a local law, which forms a rule of property; and this court has always held in the highest respect, decisions of state courts on such subjects. We are satisfied it is a reasonable interpretation of the statute, and upon principle or authority see no ground for drawing it into doubt.

The title of the plaintiffs being established, it is next to be compared with the titles of the respondents. It is conceded on all sides, that none of the titles of the latter are of superior dignity to that of

the plaintiffs, except the title claimed under an entry of Thomas Swearingen, on a military warrant. This entry is as follows : "On the 26th of April, 1780, Thomas Swearingen enters 1,000 acres in Kentucky, by virtue of a military warrant, for military services performed by him last war, on a spring branch about six miles a northeastwardly course from Stoner's spring, to include a tree, marked A. B. C. S. T. at the head of said spring." Stoner's spring is admitted to be a place of notoriety ; but the marked tree and spring branch, instead of being at the distance of six miles, is found at the distance of four miles and a half, and in a course not northeasterly. The call for a spring branch generally, or for a spring branch, to include a marked tree at the head of the spring, is not a sufficiently specific locative call. It requires farther certainty to point out its position ; and this is attempted to be given in the present entry by the call for course and distance. The course is not exact, and the distance called for is a mile and a half from the place where the object is to be found. It is the opinion of this court, that it would be unreasonable to require a subsequent locator to search for the object at so great a distance from the point laid down in the entry ; and the entry must, therefore, be pronounced void for uncertainty.

Mr. Chief Justice MARSHALL. In this case I dissent from the opinion which has been delivered on one point ; the validity of Austin's entry. I am not satisfied that the call for the buffalo road ought to be discarded as immaterial. It appears to me to bear a

strong analogy to a call for a *marked tree*. It is an object of notoriety, distinguishable from other objects, peculiar to itself, and which would be looked for by subsequent locators. Finding a buffalo road in the neighbourhood, the judgment would be divided between the call for that road, and the call for course and distance.

Understanding that this entry has been determined in Kentucky to be sufficiently certain, I would have acquiesced in that decision, had it not also been stated, that the question on its validity, did not come before the court. Under these circumstances, we should, had the court thought the entry invalid, have suspended our opinion until the case could be inspected. This delay is rendered unnecessary by the opinion that the location may be sustained.