WALTER M. BOOTH v. F. E. STRIPPLEMAN AND OTHERS.

Though it is settled as a general rule that, in determining the locality of a grant of land, regard is to be had, first, to calls for natural objects; second, to calls for artificial objects; and third, to course and distance; yet, calls for course and distance will prevail over those for either natural or artificial objects when, upon applying the calls of the grant to the land, the surrounding and connecting circumstances, adduced to explain the discrepancies, show that course and distance furnish the most reliable and certain evidence of the true locality of the grant. The case of Booth v. Upshur, (ante 64,) cited and approved.

Where, for the third line of a grant, there was a call by course and distance for a "stake" in a line of another survey, and thence for the fourth line along such other line by course and distance to the upper river corner of such other survey; and the line and corner of such other survey had never been established or marked, and are incapable of identification; and the line so called for could not be reached upon the course directed, however much the distance should be prolonged; nor in the distance given, however much the course should be varied; and such prolongation of the distance, and deflection of the course as would close the grant upon the line of the other survey so called for, would greatly and materially vary the grant from the configuration required by law, and would include a much greater area than the title called for: Held, that, under these circumstances, the call for the unestablished line and corner of the other survey is to be disregarded, and the third line is to be run by the course and distance to find the fourth corner, and the fourth line from thence by the course directed, prolonging the distance, if necessary, to close the survey upon the river front.

If the line of the other survey and the points therein, called for as aforesaid, had been established before the date of this grant, and could now be identified, then the course and distance would be disregarded, and the lines be so run as to close the grant upon the line of the other survey, regardless of the excess of the area or the configuration of the grant.

APPEAL from Colorado. Tried below before the Hon. James H. Bell.

The appellant, Booth, instituted this suit for a mandamus to the appellee, Strippleman, compelling him, as district surveyor of the Colorado land district, to survey certain land upon which the appellant had filed sundry land certificates, which land the appellant claimed to be vacant public domain and subject to his appropriation. C. C. Herbert, R. and D. G. Mills, Q. Dunovant, and

Calvin Gordon, proprietors of the surrounding surveys, and claimants of the land filed upon by the plaintiff, were also made defendants in virtue of their antagonistic interests.

The controversy turned upon the questions, whether the tracts designated in the opinion as the McLane and McNair league and the Ross league closed upon each other, or whether the calls in the grant of the former for the upper line and upper river corner of the latter should be disregarded, and the lines be run by the courses and distances, in which case there would be left between the two leagues a vacant space subject to the plaintiff's locations.

The facts appear sufficiently in the opinion.

The jury found the issues in favor of the defendants; a motion for a new trial was made by the plaintiff, and overruled by the court; whereupon the plaintiff appealed.

*I. A. & G. W. Paschal*, and *John H. Robson*, for the appellant. It is the acts done on the ground by the surveyor in pursuance of lawful authority which constitute the survey, (1 J. J. Mar. R., 451.) Course and distance yield only to visible and known objects; they do not yield except to calls more material and equally certain. (2 Wheat. R., 316; 7 Wheat. R., 7.)

It is only when lines are *actually marked* that a call for them will control course and distance. (1 Dev. & Bat. R., 427; 14 Penn. St. R., 59; 6 Peters' R., 508; 4 Wheat. R., 444; 4 Cond. R., 501; 1 Bibb R., 467; 4 McLean R., 279; 1 Hayw. R., 22, 238, 376; 6 Litt., (Sel. Ca.,) 391; 4 Sergt. & R., 461; 12 Penn. St. R., 180.)

The terminus of a line must be either the distance called for in the deed, or some permanent monument which will endure for years. A "stake" is not such a monument, and evidence of its erection when the land was surveyed is not admissible to control the course and distance. (Reid v. Schenck, 3 Dev. R., 72, 77.)

Course and distance from a given point is a certain description in itself, and therefore is never departed from unless there be something else which proves that the course and distance stated in the deed was thus stated by mistake. (1 Dev. & Bat. R., 76 ;

Bryan v. Berkeley, Littell's Sel. Ca., 98; 4 Monroe R., 32; 1 Strobh. R., 143.)

*What* are the termini of the lines of a survey are points of construction, and for the court to decide; *where they are*, questions of fact for the jury. (Reid v. Schenck, 3 Dev. R., 65, 77; Hurley v. Morgan, 1 Dev. & Bat. R., 427; Dimmitt v. Lashbrook, 2 Dana, R., 2.) .

The case of Ralston *et al.* v. McLeary, 9 Dana, Ky. R, p. 338, (where these subjects are so well understood,) is precisely in point. The facts in the two cases are precisely the same. Judge Marshall says: "The material question is whether Richardson's line must necessarily form a part of Ham's survey, regardless both of courses and distances as called for in Ham's patent; or whether the call for that line shall be disregarded, and the courses and distances adhered to. If the fourth line of Ham had been actually run from his fourth corner to a point in Richardson's line, that point, if it could have been identified, must have been the fifth corner, whatever might have been the course or length of the line leading to it, and Richardson's line must consequently have been the closing line of the survey, however misdescribed.

"But this is not a question of tracing an actual boundary, or of discovering a lost one, or one which may be presumed to have been completed; but of constructing a survey by adding two lines which were never actually run. And the cardinal object is to ascertain what the surveyor would have done if he had gone on to complete the work. (Berkely v. Bryan cited in 2 Bibb, 493.) This is to be ascertained, not by vague conjecture, but by rational deductions from his report, as compared with the existing facts. * *

" Did the surveyor call for Richardson's line because he intended to reach it regardless of course, distance, figure and quantity? or did he call for it merely because he supposed it would be found in the course and at the distance named, and that following it thence to the beginning, the quantity would be included and the designated figure made out ?"

" There is certainly no necessity here for abandoning course and distance, which are in themselves certain. There is no mistake in

the courses and length of the lines actually run, and the remaining courses and distances lead with great certainty to the beginning. Why, then, abandon them, and adhere to a vague and repugnant call for a stake in a line of which the surveyor knew nothing, and for running with that line in a direction widely variant from its course, and for a distance greatly exceeding its whole length? It does not even appear that the line of Richardson was itself a marked line, and this circumstance, though not essential to the conclusion to which we have come, certainly weakens the opposite construction of the survey, so far as it depends upon the position that an actual marked boundary, or a call for physical objects, must control the call for course and distance."

We invite attention to the whole case.

In Berkely v. Boumar, 2 Bibb, 493, Chief Justice Boyle says: "Where the lines and corners of a survey are found actually marked upon the ground, although they may vary from the courses and distances described in the patent, yet if sufficiently identified, they constitute the true boundaries of the land appropriated by the patent; and although they may be defeated or destroyed by design or accident, if their true position can be ascertained by oral testimony, the courses and distances must yield to them; but notwithstanding the marked boundaries while extant, or their true position if ascertainable by witnesses, must control the courses and distances, yet when they become extinct, and their position is no longer capable of proof by other means, the courses and distances become the only guides. In such a case the aid of both is necessary, for neither course without distance, nor distance without course, will lead to any definite object. When there is no confliction between course and distance, there is no difficulty in the case.

"*We must pursue them wherever they conduct, and stop wherever they direct, without departing from either.* Where the survey has been accurately made, and but one corner can be found, no repugnance can exist between the courses and distances in directing us to the true position of the lost lines and corners; and neither course nor distance will be required to yield to the other in order to make the survey close. The result will be the

same where two or more of the lines and corners are extant, and others missing, if those that are found do not vary from the courses and distances of the corresponding corners and lines of the patent."    *    *    *    *    "On the other hand, it must be admitted, that a mistake in the distance of the lost line does not necessarily follow from the existence of a mistake in the course of the lines that are extant; for mistakes do not happen systematically according to rule.    It is, therefore, only from *necessity; ut res magis valeat quam pereat*, that a presumption of mistake either of course or distance ought to be indulged."

This view is also in accordance with the opinion of Chief Justice Marshall in the case of Shipp and others v. Miller's heirs, 2 Wheat., 316; 4 Cond. R., 132.    We invite particular attention to the reasoning in this case; and also of Chenoweth v. Haskell, 3 Peters, 92.

This court in Hubert v. Bartlett, 9 Tex., 104, cites McCulloch v. Richardson, 1 McL. S. C. Rep., 167, and 2 Const. Rep., 115, and deduce the following rule:  "Hence there are many cases where the course and distance will control natural marks or boundaries, as where it is apparent, on the face of the grant that these were inserted by mistake, or were laid down by conjecture, and without regard to rule; and so of a variety of cases which may be supposed to exist."

This view is perfectly consistent with the general principle in Urquhart v. Burleson, 6 Tex. R., 503.

*J. W. Harris,* for appellees.

MOORE, J.    It is the usual and ordinary presumption that grants of land made by the State have been separated from the mass of public domain by an actual survey, made with a chain and compass.    When, therefore, a re-survey is made, for the purpose of designating or ascertaining a tract of land that has been previously granted, resort is primarily had to the course and distance, as called for in · the survey; and if they, and all the specialities given in the grant for its identification, are found to agree with the survey, there is no doubt as to its true locality.

But owing to the ignorance, inaccuracies and mistakes of survey-ors, the variation at different times of the magnetic needle, the discrepancies in the instruments used by surveyors, and more fre-quently to the fact that the original survey was never actually made upon the ground, it is often found that, although the natural or artificial objects given in the grant to identify it can be desig-nated, yet they are shown to occupy very different relative positions from what they are said to do by the calls for course and distance in the grant. As in such cases it is impossible to make a survey corresponding in all respects with the calls given in the grant for its identity, it has been a matter of frequent discussion in different courts, and sometimes one of great difficulty, to determine by what rules they will be governed in determining its correct locality. It may be said, however, to be now settled as a general rule, that we are to be governed, first, by natural objects, such as rivers, creeks, mountains, &c.; second, by artificial objects, such as marks, entries, marked lines, &c.; and third, by course and dis-tance. But still, calls of the latter class will sometimes control those of the others, as was said by Mr. Justice Roberts, in the case of Booth v. Upshur, "when upon applying the calls of the grant to the land, the surrounding and connecting circumstances adduced in proof to explain the discrepancy, show that course and distance is the most reliable and certain evidence of the true locality of the grant."

The only question in this case depends upon the proper location of the McLane and McNair league. The title of said league calls to begin at the lower river corner of the Strawsnider league, and to run thence northeast 353 varas to the east corner of the same, thence south 88 degrees east 5400 varas to a corner on the bank of Aguila lake. It is found, however, that the distance called for will not reach the lake by 540 varas; but as there is no fact or circumstance shown with reference to these two conflicting calls, it is evident that guided by the preceding general rule that we have recognized, that this line must be prolonged to the border of the lake, where must be located the third corner of the survey; and from thence the title calls for a line to be run south, 53 degrees east, 4100 varas, to a stake in the upper line of the

James Ross league; and from thence south 77 degrees east with said upper line, to Ross' upper corner on the river. It is out of these calls that the entire difficulty grows in locating the survey. For upon attempting to make the survey, it is found that a line run by the course given in this call, will not, however far it may be protracted, intersect any line of the Ross league, nor will a line of the length called for, by any variation from the course, reach it. It is, therefore, absolutely essential that we shall abandon, in running this line, the call for course or distance, or that for a stake in the upper line of the Ross league, and so much of the next call as directs that we shall run with said upper line to the river. If the upper line of the Ross league was a well known and established marked line, and the point of intersection with it could be shown and identified by any natural or artificial objects, we should, unless controlled by "surrounding and connecting circumstances," be required to disregard the course and distance mentioned in this call, and run by a direct line from the corner on the bank of the lake to the point called for in said upper line.

The line of the Ross league called for cannot be regarded as a marked line, or a visible artificial object. Its locality can only be ascertained by a survey of the Ross league, and that, too, by commencing at its lower river corner, and protracting the entire survey to the upper river corner, called for in the McLane and McNair title. There was an effort made upon the trial, in the court below, to show that the line called for was marked and established at the time the survey of the Ross league was made; but although the verdict of the jury seems to have been controlled by the evidence adduced by the defendants on this point, it cannot be regarded, with even plausibility, as having shown the line to have been such an one as can be regarded as a controlling call in this title. The line passes, for almost its course, through a prairie. The witness relied upon by the defendants, does not pretend that there is more than the blazes upon a few scattering trees, near where the line enters the river bottom, by which it was ever marked; and he does not say that these were marked while he was present with the surveying party; and it was not shown how he learned that they were intended as the marks of this line. His brother, who was

also with the surveyor present, has no knowledge that the line was ever marked. And the surveyor, who was appointed by the court to survey the land in controversy, states that these marks were not intended for this line, but were blazes of an old and now abandoned road. But if these are marks for said line, they must be several miles distant from the point at which the McLane and McNair league would intersect it, if required to do so. It is also to be considered, that, if this line is to be so run as to intersect said upper line of the Ross league, while there must be a wide departure from the course called for, and the line must be protracted more than a thousand varas beyond its true length, the configuration of the survey will be greatly and materially varied from that prescribed by law; it will also include near three thousand acres more than its requisite quantity of land. While these considerations of themselves, might not be sufficient to require that a call for course and distance should control one for a well known and established artificial object, they certainly are sufficient to induce us to say that under these "surrounding and connecting circumstances," a call for course and distance cannot be controlled by a call for "a stake," in an open and unidentified line (Hubert v. Bartlett, 9 Tex., 104; Ralston v. McLeary, 9 Dana, 338; McCulloch v. Richardson, 1 McL., S. C., Rep., 167; Shipp v. Miller, 2 Wheat., 316; Chenoweth v. Haskell, 3 Peters., 92; Berkley v. Bowmar, 2 Bibb, 493.)

The fourth corner being ascertained, by running the third line by the calls for the course and distance given in the title, the fourth line must be run by the course, protracting it beyond the distance called for to the river. This leaves the land upon which plaintiff had filed unappropriated by this survey, and consequently subject to his location.

The instructions of the court below to the jury were, we think, substantially correct; but the verdict was contrary to law and the evidence, and for this reason the court should have granted a new trial.

The judgment is reversed, and the cause remanded.

Reversed and remanded.