## E. BOON v. W. L. HUNTER.

(Case No. 1573.)

1. EVIDENCE — DEMURRER — SURVEY.— When the question is one of boundary, in an action of trespass to try title, and the locality of the survey under which the defendant claims is not questioned, or his right thereto denied, provided it be not in conflict with the land claimed by plaintiff, an averment that no actual survey of the land on which the patent under which defendant claims issued, is not subject to demurrer. It is but the averment of a fact proper to be proved in determining the actual locality of the land located and patented, by reference to its calls, and the value of such calls would be largely influenced by ascertaining whether a survey had really been made on the ground.

2. SURVEY — PATENT.— That a patent is not void because no survey of the land was made is well settled. Williamson v. Simpson, 16 Tex., 440; Stafford v. King, 30 Tex., 270. And when it is not shown that no survey was ever made of patented land a survey will be presumed.

3. SURVEY — DESCRIPTION.— When it is clearly shown that no actual survey was ever made, the rules applicable to the determination of boundaries of actual surveys do not apply in regard to the lines and corners of other surveys called for in the patent. In such a case, all matters of description must be looked to, in connection with facts surrounding the parties, and if, considering them in connection with transactions to which the parties looked when the patent issued, the land can be clearly identified, the grant will not be held void. In such a case, descriptive calls, evidently inserted through mistake, will be disregarded, and effect given to those calls that are certain and are found, which, in connection with other matters of description in the grant, will make it conform to the evident intention of the parties. Citing Booth v. Upshur, 26 Tex., 64, and other cases.

4. COUNTY MAPS — EVIDENCE.— County maps required to be kept in the surveyor's office are official documents, to which parties may look, as between themselves and the state, to ascertain where vacant lands exist; and in some cases they afford important evidence of boundary. When the understanding of the officers of the state and the grantee can be clearly gathered as to the true locality of several surveys mentioned in a patent, by looking to their location as delineated on the map of the county, such map will be looked to in ascertaining boundary.

5. SURVEY.— A line or corner of another survey called for in a patent, which issued without an actual survey being made, will be disregarded, if evidently called for by mistake, when to regard it would involve a disregard of other calls found on the ground, and inconsistent therewith, and when the call for such line or corner is inconsistent with course and distance called for, as well as the manifest intention ascertained by the other calls in the grant, and the circumstances under which the grant issued.

6. SAME.— When a line of a survey is clearly established and identified, the other lines are established by course and distance, and this though it may involve a disregard of another survey which was called for clearly through mistake, on account of the inaccuracy of the county map in use at the time.

APPEAL from Jack. Tried below before the Hon. J. R. Fleming.

Hunter instituted this suit against W. A. Benson, surveyor of Jack county, to compel him to approve and record the corrected field notes of a survey which had been made, and the original field notes approved, recorded and forwarded to the general land office, and against appellant Boon, who claimed that he owned patented lands which conflicted with Hunter's survey as corrected, and who had filed a protest with Benson setting forth his claim and protesting against Benson's approving and recording the field notes of the corrected survey.

The case was discontinued as to Benson.

The case as finally presented was one of boundary, and so tried by the court without a jury. Judgment in favor of Hunter. The facts of the case will be understood from the opinion and the maps.

*Hood & McCall*, for appellant, cited: Tyler on Boundaries, 284; p. 121; Reamer *v.* Nesmith, 34 Cal., 624; Doe *v.* Martin, 4 Barn. & Ad., 785; McMurray *v.* Spicer, 5 L. R., Eq., 527; Baird *v.* Fortune, 7 Jur. (N. S.), 926; Waterman *v.* Johnson, 13 Pick., 261; Heage *v.* Sims, 29 Ind., 574; Jackson *v.* Beach, 1 Johns. Cas., 399; Jackson *v.* Meyers, 3 Johns., 388; Wolfe *v.* Scarborough, 2 Ohio (N. S.), 361; Hamner *v.* Smith, 22 Ala., 433; Peyton *v.* Ayres, 2 Md. Ch., 64.

*Walton & Hill*, also for appellant, cited: R. S., art. 3909; Bracken *v.* Wells, 3 Tex., 90; Arberry *v.* Beavers, 6 id., 457; Watkins *v.* Kirchain, 10 id., 380; Winder *v.* Williams, 23 id., 603; H., T. & B. R. Co. *v.* Randolph, 24 id., 329; Tabor *v.* Commissioner, 29 id., 520; Horton *v.* Pace, 9 id., 83; Bass *v.* Mitchell, 22 id., 293–4; Booth *v.* Upshur, 26 id., 69, 70, 71; Stafford *v.* King, 30 id., 272–4; Phillips *v.* Ayres, 45 id., 605–6; Jones *v.* Burgett, 46 id., 290–1; Castleman *v.* Pouton, 51 id., 87–8; Hollingsworth *v.* Holshousen, 17 id., 51.

*Lovejoy, Dickson & Smith*, and *Smith & Blackburn*, also filed printed brief and arguments.

*A. T. Watts*, for appellee, cited: Murphy *v.* Stell, 43 Tex., 124; Bailey *v.* Haddy, Dallam, 376; Stroud *v.* Springfield, 28 Tex., 676; Stafford *v.* King, 30 Tex., 269, 275, 276; Phillips *v.* Ayres, 45 Tex., 607.

STAYTON, ASSOCIATE JUSTICE.— The petition, as amended, contained all the material averments necessary in an action of trespass to try title, and the court did not err in overruling the general demurrer.

The special demurrer, which questioned the sufficiency of the averments which alleged that the Hughson survey and patent were void, for the reason that no actual survey of the land for which the patent issued was ever made, was also correctly overruled; for before the exception was acted on, the averments of nullity of survey and patent by reason of there being no actual survey were withdrawn, and the averment that no actual survey of the land was ever made on which the patent under which appellant claims was issued, was but the averment of a fact proper to be proved in determining the actual locality of the land located by and patented to the appellant by reference to the various calls in the patent, the relative values and weight of which might be largely determined by knowledge whether an actual survey had or had not been made.

The question between the parties was one of boundary

The true locality of the survey made for the appellee is not questioned, nor is his right thereto denied, if it be not in conflict with the grant of land made to the appellant through the patent under which he claims.

It appears that the appellant's location was as follows:

           " Jacksboro, Tex., Dec. 27, 1872.

" E. Boon applies for a survey of one league and one labor land by virtue of certificate No. 520, issued by the clerk of the district court for Matagorda county on the 14th day of September, 1846. Situated in Jack county, beginning at the southwest corner of a survey in the name of Alfred Benton; thence west, thence south, thence east, thence north to the place of beginning, so as to cover the survey made for James Elder, M. M. Flores, T. P. Camp and F. Perez."

Under this location no survey was ever actually made, but field notes were made out by the map then in use in that land district, and returned to the general land office, on which a patent issued.

The description of the land, as contained in the patent, is as follows:

" L. and L. survey in Jack county, on the waters of Rock creek, a tributary of the Brazos river, about 13 miles S. 80 W. from the town of Jacksboro. Beginning at the S. E. corner of a survey in the name of Alex. McCulloch, from which a lone p. o. N. 11½ W. 78 vrs.— thence E. 3611 vrs., a stone mound west boundary line of a survey made for Lewis Knight — thence North 1898 varas, a stake from which a post oak North 9, East 12 varas do., South 78, West 11 vrs.— thence East 989 varas to a corner on the north boundary line of said Lewis Knight — thence north 4162¼ varas, passing A.

Benton's South West corner — thence West 4600 varas, a stone mound — thence S. 6060¼ varas, passing the N. E. corner of McCulloch survey and with his east boundary line to the place of beginning." Date, 21st November, 1873.

The location and survey under which appellee claims were made since the patent through which the appellant claims was issued.

At the time the appellant's location was made, the map in use, upon its face showed the several tracts of land mentioned in the field notes under which the appellant claims to be as appears in the sketch here inserted;

*Sketch "C."*

It seems, however, to have been subsequently ascertained that the true position of some of the tracts of land mentioned in the field notes of the grant which the appellant claims, may have been inac-

curately given on that map, and that their true locality, as found on the ground, may be as shown in the following sketch:

SKETCH 1.

The true positions, however, of the Louis Knight survey, and of surveys 2748 and 2749, are admitted, and found to be correctly given on both of the sketches here referred to.

The alteration in the map of Jack county, which makes the position of the several surveys referred to in the Hughson field notes to appear as in the last sketch given, was not made until some time in 1874.

The field notes of the Alfred Benton survey, made October 29, 1858, are as follows:

" Four and a fraction labors in Denton District, Jack Co., on the waters of West Fork of Trinity river, about 10 miles N., 85 W. from Jacksboro.  *  *  *  Beginning at a stake 100 vrs. N. of Colony half section, S. E. corner No. 2749, from which a l. o. N. 12 W. 45 vrs.; thence E. 560 vrs., a spotted oak, corner on W. side of Rocky Spring Branch, a p. o. N. 5, West 5 vrs.; thence S. 500 vrs., a stake, a double p. o. 5 in. in dia., S. 20, E. 6 vrs.; thence W. 1200 vrs., a rock corner, a live oak, S. 54, W. 7 vrs.; thence S. 820 vrs., a rock pile, small double p. o., N. 49, E. 2½ vrs.; thence W. 1785 vrs., p. o. sapling corner, a p. o. vrs. S. 80, E. 9 vrs.; thence N. 2562 vrs., a stake on S. line of Colony half section, No. 2748; thence E. 1081½ vrs., with said section line, S. E. corner of same and North W. corner of half Section No. 2749, thence S. with said Section line, 1344 vs., the S. W. corner of same — thence E. 1344 vs., S. E. corner of same, a p. o., S. 79, W. 17 vrs., do. S. 72½ W. 12 vrs., both marked with blaze — thence N. 100 vs. to beginning."

The land claimed by the appellant, if located as he claims it to be, was on land vacant at the time his location was made, and not by any other person appropriated prior to the issue of the patent under which he claims; but if it be located as the appellee contends, then the location was made on land already appropriated by other persons.  The location made by the appellee is known on the above sketch as the "Fagworth" survey, which, however, in name is incorrect and should be "Ensworth."

It clearly appears that no actual survey under the Hughson certificate was ever made, but that the field notes were made out by calculations based on the map then in use, after the ground west of the Louis Knight survey, and supposed to be covered by the forfeited surveys named in the location, had been examined.  It also appears that the calls in the field notes, in so far as they call for the Louis Knight lines, corners and bearings, are correct.

That a patent is not void because no survey was actually made is well settled.  Williamson v. Simpson, 16 Tex., 440; Stafford v. King, 30 Tex., 270.  The appellant does not appear to be without fault in reference to the manner in which the field notes of the grant were

made, but we are not authorized to declare the patent void for what occurred prior to its issue in this respect.

The question then is: Can the land covered by the patent under which the appellant claims be so identified as to locate it where he claims it to be? If so, then the appellee was not entitled to recover, for the evidence shows that there is a conflict of seventy-five or one hundred varas between the surveys claimed by the respective parties.

The rules for the determination of boundaries when a patent has been issued on a survey actually made have been so often stated that it is not deemed necessary to repeat them; and if it be not shown that no survey was made, such survey will be presumed.

It is, however, not believed that the same rules in regard to the lines or corners of other surveys called for in a patent can be applied, when it clearly appears that no actual survey was ever made, and in such case it becomes necessary to look to all matters of description contained in the patent, in order to determine what particular land was conveyed and intended by the state and the grantee to be conveyed by the patent. If, in such a case, from a consideration of all these, in connection with the facts surrounding the parties, and the transactions to which the parties looked at the time the patent was issued, the thing granted can be with certainty identified, then the grant ought not to be held void; but such matters of description as were evidently given by mistake should be disregarded, and effect given to the calls which are certain and are found, which, in connection with other matters of description contained in the grant, will make it conform to the evident intention of the parties. Booth v. Upshur, 26 Tex., 64; Urquhart v. Burleson, 6 Tex., 502; Hubert v. Bartlett, 9 Tex., 98; Booth v. Strippleman, 26 Tex., 436; Evans v. Weeks, 6 Rich., 85; Weakly's Lessee v. Wilson, 1 Overton (Tenn.), 377; Milling v. Crankfield, 1 McCord, 261; Shipp v. Miller, 2 Wheat., 316; Ralston v. McClurg, 9 Dana, 338; Newsom v. Pryor, 7 Wheat., 8; Ferris v. Coover, 10 Cal., 624. In the last case many cases bearing on the question are considered.

The sketches from maps, above set out, were introduced by agreement of parties, and the appellee introduced parol evidence tending to show that the Benton and McCullough surveys were situated as shown in "Sketch 1," which is in accordance with the map of Jack county as made in 1874, and his witnesses and others proved that "Sketch C" showed the several tracts of land called for in the patent to the Hughson survey, and also the forfeited or abandoned surveys named in appellant's location, which he intended to cover,

as they had appeared at all times on the map of Jack county, in use in the surveyor's office and in the general land office, until after the patent on the Hughson survey issued.

Such maps were required to be kept in these offices, not only for the purpose of enabling the officers charged with the duty of performing all the acts necessary to be done in passing the title of the state to parts of its public domain correctly to perform such acts, but for the further purpose of enabling those who desired to acquire lands from the state to know by an inspection of such maps the localities in which vacant lands were to be found. They were official documents, on which, for the purposes for which they were intended, parties might rely, as between themselves and the state, for the ascertainment of the locality in which vacant lands were to be found. Such maps are often introduced for the purpose of establishing not only general locality, but boundary; and in some cases, in which owners have mapped their property and afterwards made sales with reference to such maps, they become the most important evidence as to boundary, and especially so when the description given in a deed becomes for any reason uncertain.

In Surget v. Little, 5 S. & M., 319, which was a case of disputed boundary, it was held that copies of official maps of surveys of land in that state, deposited in the surveyor-general's office, was the best evidence of the extent, character and boundaries of such surveys; and, therefore, parol evidence that a private survey conformed to such official survey, without producing a copy of the official survey, was improper.

In Huffman et al. v. McCrea, 56 Pa. St., 95, it was held that a map of the Holland Land Company, under whom a party claimed, it being ancient and in long use, was evidence of boundary against such person as an admission by the company.

Many cases might be cited in which maps have been used even for the purpose of proving boundary, as between persons claiming under the same grantor who had mapped lands and sold parcels of the land so mapped with reference to the map.

In this case, the sketch "C" was evidently admitted not so much for the purpose of showing the true boundaries of the McCullough, Benton and Knight surveys called for in the Hughson patent, and of the abandoned or forfeited surveys named in appellant's location, as for the purpose of showing what the officers of the state and the appellee understood at the time the patent issued to be the locality of these several surveys.

The language used in the patent must be considered with refer-

ence to the understanding of the parties, at the time it issued, as to the true locality of the several surveys mentioned in it, if this understanding can be clearly arrived at; for otherwise we do not arrive at the real intention of either the grantor or grantee, which in cases of this kind is the real and important question.

It is evident that the officers of the state, having the map before them which was in use in Jack county at the time the location was made, field notes made out and returned, and the patent issued under which the appellant claims, did not intend to nor believe that they were patenting land in the locality in which the Hughson survey would be placed, following its calls, if the McCullough and Benton surveys are located where they are claimed to be by the appellee; for the maps did not show them to be so located; and besides, so to locate it would be to place it on land which the maps showed had then been appropriated by other persons.

The general locality called for in the patent was "about thirteen miles south eighty degrees west from the town of Jacksboro," while its general locality, if to be located as appellee contends it should be, would be from Jacksboro about ten miles north eighty degrees west.

The abandoned or forfeited surveys referred to in the location were then, by the maps in use, shown to be in the place which the appellant, relying on the same maps, intended to appropriate by his location, field notes and patent. In fact, the Camp survey did occupy upon the ground the position which the map then in use showed it to occupy, and whether the others did or not depends on the true positions of the McCullough and Benton surveys.

It is impossible to give the form to the Hughson grant which is given to it by the field notes contained in the patent, if the various calls for corners and lines of other surveys as they are now claimed to be located were to be reached; and besides, the courses and distances necessary to reach such points, as they are now claimed to be located, are utterly inconsistent with the idea that any such thing was ever intended. Moreover, the area of land which would be embraced within the Hughson survey, if it be controlled by what is now thought to be the locality of the McCullough and Benton, and course and distance be utterly disregarded in forming a survey which will touch all other points called for in the patent in accordance with the theory of the appellee as to how the lines of the survey must run, would be utterly inconsistent with the intention of the state to make a grant based on the Hughson certificate.

That the locator had not the remotest suspicion that the McCul-

lough and Benton surveys were situated where the appellee now claims them to be is too clear, and that he did intend to locate the land which he now claims is evident.

We are of the opinion that it sufficiently appears that the officers of the state thought they were granting to the appellant the land which he now claims, and that he believed his location, field notes and patent covered that land.

The question then is, Is there enough in the patent to identify the land granted; enough to enable a surveyor, under admitted facts, to run the several lines of the survey in accordance with the calls which become in this particular case the controlling calls?

When the line or corner of another survey is called for in field notes made without an actual survey, such line or corner, if evidently called for by mistake, may be disregarded, when to observe them would be inconsistent with all the other calls which upon the ground are found, inconsistent with the course and distance called for, and with the manifest intention of the parties to be arrived at by a consideration of all the calls in the grant and the facts which surrounded the parties and to which they looked at the time the grant was made.

Such we deem the calls for the McCullough and Benton grants, under the facts before us, if in fact they are located as appellee claims.

The Louis Knight survey is admitted to be located as it appeared to be on the map at the time the patent to the Hughson grant issued, and its corners are well defined, and had been seen and were known by the appellant at the time his field notes were made out.

The southeast corner of the Hughson grant is called for on the west line of the Knight survey at a distance of one thousand eight hundred and ninety-eight varas south of an established corner of that survey, and to run on same line as the Knight to that corner. From that established corner the Hughson grant calls to run east nine hundred and eighty-nine varas to a corner on the north line of the Knight survey; such is found to be the course of that line of the Knight survey. From the corner last named the call in the Hughson grant is north four thousand one hundred and sixty-two and one-half varas, passing Benton's southwest corner.

If it be true that the Benton survey was not located as it there appeared to be on the map, and was by all persons supposed to be, it is evident that the true position of the east line of the Hughson grant where it calls for the Benton can be easily and truly determined. The Benton survey calls for surveys 2748 and 2749,

which are admitted to be truly located as they appear on both maps, and course and distance from well established corners of these surveys, as called for in the Benton patent issued in 1858, will give the true points called for as the western corners of the Benton grant, as well as its western line, as it appeared on the map at the time the Hughson patent issued.

It is by no means made clear that the Benton survey was not actually located where it was shown to be by the map, and where the appellant and the officers of the government supposed it to be at the time the patent on the Hughson grant issued; but whether so or not, the true locality of the west line of the Benton, as described in the patent under which appellant claims, can be accurately ascertained in the manner here stated, the true locality of surveys 2748 and 2749 being admitted and called for in the Benton patent.

Thus we have data, it being admitted that the Knight survey and its corners are well established, as are surveys 2748 and 2749, by which the entire eastern line of the Hughson survey can be determined.

This done, the other lines of that survey can be accurately determined by course and distance called for, disregarding the call for the McCullough survey, as we feel authorized to do, it clearly appearing that the call for that survey was caused by a mistake arising from the inaccuracy of the map then in use, if it be true that the survey is situated as now claimed by the appellee.

There is not such data in the record as will enable this court to determine how much of the survey of the appellee conflicts with the Hughson grant, located as it must be by its calls on the Knight survey, and that this fact may be determined and the true boundary line between the parties established by the district court, its judgment will be reversed and the cause remanded for that purpose; and it is accordingly so ordered.

REVERSED AND REMANDED.

[Opinion delivered December 5, 1884.]