W. T. ROBINSON ET AL. V. S. E. DOSS.

*(Case No. 4094.)*

1. SURVEY.— While the general rule in determining the location of a survey where there are conflicting calls, is that course and distance must yield to natural or artificial monuments or objects, there are cases where course and distance will control natural marks or boundaries; as where it is apparent from the face of the grant that they were inserted by mistake, or were laid down by conjecture and without regard to rule.

2. DIGNITY OF CALLS IN A SURVEY.— A call for course and distance will prevail over a call for a natural object, when, upon applying the calls of the grant to the land, the surrounding and connected circumstances adduced in evidence to explain the discrepancy, show that the course or distance is the most certain and reliable evidence of the true locality of the grant.   To hold otherwise would be to attach more importance to the general rule, which gives the highest dignity to the call for a natural object than to the reason of the rule.

3. SURVEY.— Though a survey returned by the surveyor was not actually made upon the ground, in case of conflicting calls his intention is still to be sought for by examining his report as compared with surrounding facts and circumstances.

4. CONFLICTING CALLS OF A SURVEY. —The line of a survey made over twenty years, called to run "east 8,000 varas to a stake in the head of Tonkawa branch, from which an elm bears N. 33 degrees, E. 36 varas." The elm tree was found marked as called for, at the distance of only 5,200 varas.   It was shown that the survey was begun, not at a corner, but at a point from which it was intended ·to measure 4,800 varas west, and 3,200 varas east, forming a continuous straight line, at the eastern termination of which the elm bearing tree was called for.   The elm tree

was found at the distance of only 400 varas, instead of 3,200 varas, from where the survey was really begun. The facts showed that the eastern line and corners of the survey were not actually surveyed and marked. The maps of the survey and those adjoining had always located the corner according to distance, and if thus located the proper quantity would be given, and the survey harmonize with cotemporaneous surveys. *Held* —

    1. The discrepancy of distance was so great as to be improbable.

    2. The deficiency in quantity was a circumstance entitled to weight, as was also the location of the survey, as always recognized on the surveyor's maps of surveys.    .

    3. In view of the facts found in the statement, and others in the opinion, to give superior dignity to the call for the natural object would defeat the reason and object of the general rule, which would require it.

APPEAL from Cook. Tried below before D. E. Barnett, Esq., special judge.

Suit by S. E. Doss, begun August 24, 1874, against W. T. Robinson *et al.*, in which he alleged the ownership of land certificates and surveys thereunder; that the defendants had entered upon and ejected him from the land, claiming the same under a patent to a league and labor granted to Philip A. Sublett, assignee of John Barnett.

The defendants claimed title under the Sublett (or Barnett) patent, and alleged that the call in the patent (set forth in the opinion) on the head of Tonkawa, etc., was inserted by mistake. Judgment for plaintiff.

The surveys of plaintiff were upon what the defendant claimed to be the eastern portion of the land covered by the Barnett patent. The field notes of the Barnett survey were approved by Daniel Montague, surveyor of Cooke county land district. The field notes were recorded by another person, but the certificate of approval was written on the record in Montague's handwriting, and in his handwriting the words " on the head of Tonkawa branch," were erased, and interlined as follows: " At 5,000 varas past Thomas Scott's southeast corner at 8,000 varas, a mound." That when the first map of the county was platted, the Barnett survey was placed on it, as claimed by defendants, and has so appeared ever since. In

the patent and field notes as sent to the general land office, the survey for Barnett was described as running 8,000 varas east, to the head of Tonkawa branch, etc. The Barnett survey, as platted on the map, agreed with the courses and distances and connected with the surrounding surveys.

The Thomas Scott survey was made at the same time and by the same surveying party as the Barnett survey. The field notes of the Scott called to begin on the north line of the Barnett survey, 3,000 varas west from the northeast corner of the same, a stake from which an elm marked "X" bears N. $33\frac{1}{2}$ degrees, E. 360 varas, near the head timber of Tonkawa branch, and is the same called for in the Barnett patent.

The field notes of the O. F. Leverett survey, which was made by William Howeth, one of the party that surveyed the Barnett, about three weeks after the Barnett survey was made, calls to begin at the southeast corner of the Thomas Scott survey, on the north line of the Barnett, describing the elm tree and running east 3,000 varas, passes John Barnett's northeast corner.

The contiguous surveys as shown upon the map all call for the John Barnett survey as there laid down, according to the courses and distances.

C. Dean, one of the party who made the survey of the Barnett land, testified in substance that he superintended the location and surveying of the Barnett and Scott surveys. Montague was the surveyor and James M. Perry was his deputy. Both surveys were made on the same day by the same party. That according to his recollection the Barnett survey was commenced at its southwest corner, thence east to corner, thence north to corner, thence west 3,000,— 5,000 varas, where they made the southeast or beginning corner of the Scott. The sketch map is correct as to the relative situation of the northeast corner of the Barnett and southeast corner of the Scott. The southeast corner of the Scott was 3,000 varas west of the northeast corner of the Barnett as surveyed. The field notes of the Barnett are not correct in calling for the elm

tree and Tonkawa branch at the end of the north line of the same.

William Howeth testified that he was one of the party who made the survey of the Barnett tract; that the party camped near the south line of the Barnett; the beginning was obtained by running from a corner of the Carl Gager survey, that Montague, who was along, knew; that it was the intention to locate the John Barnett and the Thomas Scott that day, the size and shape of the Barnett being agreed on the night before; was a deputy surveyor, but, being sick, turned his compass over to Perry, who started west from the beginning corner, with instructions to run west a certain distance, then north, and to meet the party at the northwest corner of the Scott survey; that he did not remember whether the south line of the Barnett, from the beginning corner to the south-east corner, was actually run or not; that when Perry went west, Montague, witness, and others named, run north; this was to arrive at the width of the Barnett, and ascertain the distance to the Ivy survey previously made; that the line was not intended as any line, or the east line of the Barnett.

When the distance was run for the width of the Barnett, the southeast corner of the Scott was established, and the north line of the Barnett; does not think that the east part of the Barnett was surveyed out, but the northeast corner was called for, and intended to be 3,000 varas east of the southeast corner of the Thomas Scott; that the call in the patent, in "the head of Tonkawa branch, from which an elm bears N. $33\frac{1}{2}$ degrees, E. 36 varas," is the same point called for as the southeast corner of the Scott; that it was not intended as the northeast corner of the Barnett, but was made for the Scott, "and I am satisfied was inserted in the Barnett field notes through mistake in making them up;" that the Scott and Barnett surveys were made on the same day, and in connection with each other; that if the Barnett is run according to course and distance, and other calls except the call for the head of Tonkawa branch, it will embrace the land sued for,

and will connect with the other surrounding surveys; that if from the head of Tonkawa branch, mentioned in the patent, a line should be run south, it would intersect the south line of the Barnett, 200 varas east of the beginning; if from that point a line is drawn to the southeast corner, it would change its course and cut it diagonally; that if from the beginning point the calls are reversed, and run according to course and distance, it would embrace the land sued for. He further testified that, three weeks after the Barnett survey, he surveyed the O. F. Leverett, and does not believe the northeast corner of the Barnett had been then fixed on the ground. The Barnett survey, as recognized on the map and by surveyors, always embraced the land claimed by plaintiff.

Cross examined. — In tracing the north line of the Barnett from the Scott southeast corner, east 3,000 varas, it would cross Tonkawa branch and Belknap road, both well known to the surveyors. The east line of the Barnett, if run as shown on the map, would cross the Tonkawa branch, and the south line from the southeast corner would cross a large creek and run through some timber. Do not believe that a surveyor would have run the lines without calling for the creeks and Belknap road. Believes the east part of the survey was not run. Satisfied that the northeast corner of the Barnett was not made when the survey was made.

Hudson testified in substance the same as Howeth. In addition, he said that Perry told him the survey was commenced on south line as called in field notes. Perry went west, and Montague north. W. W. Howeth testified to this point. This witness testified to running the Barnett, observing the call at the head of Tonkawa branch, and in substance the same as Howeth and Hudson as to the lines crossing the creeks and Belknap road.

The accompanying sketch gives a clearer idea of the relative location of the surveys:

*Throckmorton & Brown* for appellant.

I. The words " on the head of Tonkawa branch," in the field notes and patent were inserted by mistake in making up the field notes.

II. The call for " a stake on the head of Tonkawa branch, from which an elm bears N. 33½ degrees E., 36 varas," having been inserted by mistake, courses and distances must control. Freeman *v.* Gerald, Law Journal, vol. 2, p. 744; Booth *v.* Upshur, 26 Tex., 64; Hubert *v.* Bartlett, 9 Tex., 97; Urquhart *v.* Burleson, 6 Tex., 502; Duren *v.* Presberry, 25 Tex., 512; Booth *v.* Strippleman, 26 Tex., 436; Stafford *v.* King, 30 Tex., 257; White *v.* Luning, 3 Otto, 514; Phillips *v.* Ayres, 45 Tex., 606; Ferris *v.* Coover, 10 Cal., 628.

III. A location made either in whole or in part without actual survey is valid if it has such definite calls as will identify the land. Stafford *v.* King, 30 Tex., 257; Freeman *v.* Gerald, Law Journal, vol. 2, p. 744.

*W. O. Davis* for appellee.

I. The John Barnett survey does not extend east of the Elm corner at the head of Tonkawa branch.

II. The land east of the Elm corner at the head of Tonkawa branch does not belong to appellant's grant, because it is not embraced in their field notes or patent, nor in their survey as in fact made upon the ground. Anderson *v.* Stamps, 19 Tex., 464; Bartlett *v.* Hubert, 21 Tex., 8; Booth *v.* Upshur, 26 Tex., 66; Chenoweth *v.* Haskell, 3 Pet., 92.

III. A corner in fact made upon the ground by the surveyor and designated and fixed by natural and artificial objects which are called for, and correctly described in the field notes and the patent, cannot be disregarded in order to make the grant include land never in fact surveyed by the surveyor.

IV. An office survey (*i. e.,* a set of field notes made out without an actual survey) cannot, after the issuance of the patent, and in an action of trespass to try title, be corrected so as to conform to the intention of the surveyor, but the grantee

must abide the description contained in the grant and field notes, and can only hold the land therein described.

V. The position of the east line of the Barnett survey, under the evidence, was a question of fact for the court to decide, and the judgment of the court should not be disturbed when, as in this case, there is evidence to support it. Gilliard *v.* Chessney, 13 Tex., 337.

GOULD, ASSOCIATE JUSTICE. — Doss claimed the land for which he sued by virtue of locations in 1874.

The defendants claim under a patent for a league and labor of land to Sublett, assignee of Barnett, issued November 1, 1855. The plaintiff claiming that the field notes of the patent to Sublett, instead of including a rectangle of 8,000 by 3,250 varas, making a league and labor, in fact include only a rectangle of 5,400 by 3,250 varas, located on the eastern part of the land claimed by defendants, as on vacant public domain.

Whether this land so located was included in the land patented to Sublett was the main issue.

The court, no jury being demanded, after hearing the evidence, gave judgment in favor of the plaintiff.

The field notes of the patent are as follows: "In Cooke county, Texas, on Elm Fork of Trinity river, about eleven and one-half miles west of Gainesville. Beginning at a stake 1,900 varas N., 45 degrees W. from Carle Sayers' west corner, from which an elm bears N. 9 degrees W., 4 varas; another bears N. 77½ degrees E., 21 varas; thence west 4,800 varas to a rock, from which two chinas bear S. 71 degrees W., 305 varas; thence north 2,940 varas to right hand fork of Elm, 3,250 varas to rock mound, from which an elm bears S. 34 degrees E., 115 varas; thence east 8,000 varas to a stake in the head of Tonkawa branch, from which an elm bears N. 33 degrees E., 36 varas; thence south 3,250 varas, to stake in prairie; thence west 3,250 varas to the place of beginning.

In their answer defendants aver that the call " in the head of Tonkawa branch from which an elm bears N. 33½ degrees E., 36

varas," was inserted in said field notes and patent by mistake, and the true corner was fixed by the courses and distances given in said patent.

On attempting to run out the survey, the beginning point was well identified, as also was the first or southwest corner of the Barnett league and labor, the distance being, however, 5,200 varas instead of 4,800. Thence running north, the west line as called for is found, and the northeast corner at 3,250 varas is found and identified. From this point, running east through prairie at 5,400 varas, is found the head of Tonkawa branch, and the bearing tree (elm) marked as called for in the patent is found. No other marked lines or corners are found. The survey is prairie, with the exception of timber on the creeks and branches. To pass east beyond the elm tree the distance called for, would cross a public road well known to surveyors at the time of the survey, and would terminate in a high prairie. The east line, if run at the distance called for, would cross Tonkawa branch, and the south line to the point of beginning would cross a large creek, and run through some timber. Surveyors testify that finding no calls for these objects, they conclude that the eastern part of the survey was never actually made.

The elm tree in the head of Tonkawa branch is also identified as the beginning corner of the Thomas Scott two-thirds of a league survey, made by the same surveyors who made the Barnett, and on the same day. The field notes of the Scott, called to begin on the north line of the Barnett survey, 3,000 varas west of the northeast corner of the same, a stake from which an elm marked X bears N. 33½ degrees E., 360 varas, near the head timber of Tonkawa branch. Notwithstanding the discrepancies, it seems well established that this tree is identical with the elm tree called for in the Barnett field notes. The two surveys as delineated in the maps when first placed there, and ever since, place the northeast corner of the Barnett about 3,000 varas east of the beginning corner of

the Scott, making the Barnett a rectangular survey of about 8,000 by 3,250 varas.

The Leverett survey was made about three weeks after the Barnett and Scott, by a surveyor who was present and assisted in making these surveys. Its field notes call to begin at the southeast corner of a two-thirds league and labor survey made for Thomas Scott, on north line of John Barnett's league and labor, from which an elm marked X bears N. 33½ degrees E., 360 varas; thence east on said line at 1,180 varas, Tonkawa branch; at 2,530 varas, Belknap road; at 3,000 varas, pass said Barnett's northeast corner, etc.

· The field notes of all adjoining surveys to the Barnett, made subsequent thereto, call for the Barnett as if it extended eastward the full distance called for.

It appears from the testimony of several persons who were present and assisting at the surveys, that the surveying party came out to make the Barnett and Scott surveys, and after establishing the beginning point of the Barnett, divided into two parties, one, under Perry, a deputy surveyor, running west a certain distance, thence north, and to meet the other party at the northwest corner of the Scott; the other, under Montague, ·the principal surveyor, running north to arrive at the width of the Barnett, the line run not being the east line, or any · line, of the Barnett. They established the southeast corner of the Scott (on the north line of the Barnett) at the elm tree in the head of Tonkawa branch, called for in the patent. The evidence of these parties, though not entirely consistent, shows, we think, that the eastern part of the Barnett was not actually surveyed.

In addition to the foregoing, these parties testified that the intention was to make the corner of the Barnett not at the elm tree, but at a point 3,000 varas east. It also appears that Montague was the surveyor who approved the field notes, and in the record of the field notes the words "in the head of Tonkawa branch" were erased, and the following interlined

in Montague's handwriting: "Five thousand varas past Thomas Scott's southeast corner, at 8,000 varas, a mound." The field notes as returned to the general land office corresponded with those in the patents.

The position assumed by appellees is that the survey does not embrace land east of the Elm corner at the head of Tonkawa branch; that that corner being fixed by natural and artificial objects, called for and correctly described in the field notes, cannot be disregarded in order to make the grant include land never in fact surveyed by the surveyors.

It appears in this case that the calls of the survey cannot all be satisfied, and the general rule controlling such cases undoubtedly is, that course and distance must yield to natural or artificial monuments or objects. It is, however, in all cases, the object to arrive at and carry out the intention of the parties, so far as it may "be gathered from the language employed," or, as it has been said by this court, "the intention apparent on the face of the grant." Hubert *v.* Bartlett, 9 Tex., 104; Tyler on Boundaries, p. 132. Or, as it was expressed in yet another case, "the legal meaning of the language of the patent, when considered in the light shed upon it by the acts constituting the survey." Robertson *v.* Masson, 26 Tex., 251. "Hence," the court say, "there are many cases where the course and distance will control natural marks or boundaries, as where it is apparent on the face of the grant that these were inserted by mistake, or were laid down by conjecture, and without regard to rule; and so of a variety of cases which may be supposed to exist." 9 Tex., *supra.*

Again, this court has said: "In the abstract, all other things being equal, a river prevails over a marked line, and a marked line over course and distance. Still the lowest grade, to wit, course and distance, is made to prevail over the highest grade, to wit, rivers, creeks, etc., when, upon applying the calls of the grant to the land, the surrounding and connected circumstances adduced in proof to explain the discrepancy show that course and distance is the most certain and reliable evidence of the

true locality of the grant." Booth v. Upshur, 26 Tex., 70; Booth v. Strippleman, id., 436; Browning v. Atkinson, 37 Tex., 659.

In a recent case in the supreme court of the United States, speaking of the general rule, it is said: "This rule is not inflexible. It yields whenever, taking all the particulars of the deed together, it would be absurd to apply it. For instance, if the rejection of a call for a monument would reconcile other parts of the description, and leave enough to identify and render certain the land, it would be absurd to retain the false call and thus defeat the conveyance." White v. Luning, 3 Otto, 524.

Speaking of a grant from the government, Justice Field, then of the supreme court of California, says: "The rules adopted in the construction of boundaries are those which will best enable the courts to ascertain the intention of the parties. Thus, preference is given to monuments because they are least liable to mistake, and the degree of importance given to natural or artificial monuments, courses and distances is just in proportion to the liability of parties to err in reference to them. But they do not occupy an inflexible position in regard to each other. To hold otherwise would be to give a greater importance to the rule itself than to the reason of the rule. It may sometimes happen, in case of a clear mistake, an inferior means of location will control a higher." Ferris v. Coover, 10 Cal., 628. See also Davis v. Rainsford, 17 Mass., 207; Norwood v. Byrd, 1 Richardson, 135; Fulwood v. Graham, id., 497; cases cited by Justice Field in Ferris v. Coover. See also Peaslee v. Gee, 19 N. H., 273.

Appellees assert that an office survey, a survey not actually made, cannot be made to conform to the intention of the surveyor; citing Chinoweth v. Haskell, 3 Pet., 92. That case does not establish the rule that the intention of the surveyor is to be disregarded as to the location of lines not actually run out. It announces and enforces a rule applicable to all cases, that "the intention of a surveyor can be of no avail since he has not indicated this intention on his survey."

On the other hand, the authorities show, that, although the survey was not actually made, we are still to seek for the intention of the surveyor. Says Judge Marshall, speaking for the supreme court of Kentucky: "This is not a question of tracing an actual boundary, or of discovering a lost one, or one which may be presumed to have been completed; but of constructing a survey by adding two lines which were never actually run. And the cardinal object is, to ascertain what the surveyor would have done if he had gone on to complete the work. (Citing 2 Bibb, 493.) This is to be ascertained, not by vague conjecture, but by rational deductions from his report, as compared with the existing facts." Ralston v. Mc-Clurg, 9 Dana, 339; see also Phillips v. Ayres, 45 Tex., 607; Booth v. Strippleman, 26 Tex., 441; Booth v. Upshur, id., 72–3.

If the patent to Sublett be read in the light of the surrounding circumstances (rejecting the evidence as to Montague's action in interlining the recorded field notes, leaving the original unchanged, and rejecting other evidence as to what witnesses supposed to have been the intention of the surveyor), our opinion is that it clearly appears that the call for the elm tree as a corner is a mistake.

1. The discrepancy of distance is not only so great as to be improbable, but that improbability is increased when it is remembered that the survey was begun, not at a corner, but at a point from which it was intended to measure 4,800 varas west, and 3,200 varas east, forming a continuous straight line. It is not probable that the southeast corner was made, or could have been intended to be, at a distance of only 400 varas from the beginning point, instead of 3,200 varas, as expressed in the field notes.

2. The deficiency in quantity is a circumstance entitled to some weight. Tyler on Law of Boundaries, 129; Booth v. Strippleman, 26 Tex., 443.

3. The Scott field notes made on the same day show that the surveyor did not intend to give the Scott and Barnett a common corner, but supposed that, giving to the north line of

the Barnett the distance of 8,000 varas, the corner of the Scott would be 3,000 varas west of the Barnett corner.

4. The maps of these surveys as they have been ever since the surveys were made, locate the corner according to distance.

5. The evidence given by those who assisted in making these surveys, and the action of one of those parties, himself a surveyor, in the calls of an adjoining survey made by him a few weeks afterwards, show that the eastern lines and corners of the Barnett were not actually surveyed and marked, and show what was understood at the time to be the relative position of the Scott southeast corner and the Barnett northeast corner.

Rejecting the single call and laying off the eastern part of the survey according to course and distance, we carry out the manifest intention to make a rectangular survey, occupying with reference to the Scott, the relative position indicated on the public maps, and by the field notes of the two surveys, as recognized in all the subsequent adjoining surveys of that period.

The case is one in which adherence to the general rule would be to defeat the reason and object of the rule. We think it equally clear that if the plaintiff has been misled by the calls of the patent, it has been because of his own neglect to make that examination into the surrounding circumstances which he should have made before undertaking to locate on lands recognized in the general land office and on the official maps as having been patented. To the extent of the course and distance called for in the patent, the court should have awarded the land to the defendants.

In disposing of the case on this question solely, we express no opinion as to the validity of the Runnell certificate. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 22, 1880.]