TEX. & PAC. RY. CO. V. RECTOR M. THOMPSON.

(Case No. 1837).

1. CERTIFICATE — RELOCATION — SURVEYS — A party located lands and returned his.
field notes to the land office with the accompanying certificates ; afterwards he
filed corrected field notes in the land office. *Held :*
(1) That if the second survey covered land which could not have been 'embraced
in the survey first made, under the location on which it was made, it was neces-
sary for the parties to proceed as in an original appropriation of land.   R. S.,
Arts. 3894, 3901.
(2) If the location originally made would cover the land embraced in the
survey last made, then, notwithstanding the first survey and the certificates.
were still in the general land office, the first survey could be corrected so as to
conform to the original location.
(3) The locator would lose no right through the fault of the surveyor,
through which the land actually located was not covered by the first survey,
unless he induced some subsequent locator to appropriate the land not cov-
ered by the first survey.
(4) In the absence of evidence to the contrary, it should be presumed that
the first survey was made in accordance with the location.
2. CERTIFICATES — LOCATIONS — PATENTS — Covering a part of a survey with two cer-
tificates and accepting a patent under one of them, in the absence of some
further fact showing an intention not to claim that part of the survey not
covered by the patent, cannot operate as an abandonment of the location and
survey, in so far as the land contained in it, and not covered by the patent, is
concerned.
3. SURVEYS—LOCALITY—CALLS—In making surveys for patents to surveys 1, 2,.
3, 4, and 5, the surveyor did not actually survey the tracts ; survey 1 called to
begin at an object situated by course and distance from a certain corner of

survey 146, the object being the same called for as a corner of the S. grant; survey 2 called for the same objects for one of its corners as were called for in the O. grant, but neither the S. nor the O. grant were called for by name; surveys 1, 2, 3, 4 and 5 called for each other. At the time the surveys were made the maps then in use showed the S. and O. grants to be situated at points which would have made the calls for objects at their corners proper for corners of surveys 1 and 2; the S. and O. surveys were actually located at different places from those represented on the maps. *Held:*

(1) That the locality of surveys 1, 2, 3, 4 and 5 did not necessarily depend upon the true localities of the S. and O. grants, objects at the corners of which were called for by mistake. Boone v. Hunter, 62 Tex.

(2) If the corner of survey 146 was actually established on the ground, or could be established from other calls, the true position of tracts 1, 2, 3, 4, and 5 might be established.

4. EVIDENCE — SKETCHES — The commissioner of the general land office may give certified sketches from the maps in his office, and in many cases they are admissible in evidence.

5. SAME—Sketches made from field notes on file in the land office, with a view to show that certain tracts are situated as they are represented thereon, are not admissible.

APPEAL from Taylor. Tried below before the Hon. T. B. Wheeler.

The case was tried before the court without a jury. Appellee (plaintiff below) brought suit for the land covered by certificates Nos. 22, 23, 24, 25, 27 and 28, issued to Burr & Caswell, and Nos. 82, 83, 84, issued to the East Line and Red River railroad, and 498, issued to the Houston East and West Texas railroad. Each of these land certificates it was alleged entitled Thompson to locate six hundred and forty acres of land for himself and a like quantity for the state. He annexed to his petition the field notes of the different surveys made by virtue of the certificates. Then the petition closed in the form of an action of trespass to try title.

The defendant below plead not guilty.

The court found the following facts:

1. That on the ——— day of ———, 1874, W. C. Powell, deputy district surveyor of Palo Pinto county, went on the ground and established, surveyed and put in the corners of surveys 1, 2, 3 and 6, block 5, of Texas and Pacific Railway company; that he further put in the south-east and south-west corners of surveys 7, 8, 9, 15, 16, 21, 22 and 27, block 5, Texas and Pacific Railway company; that he did not run the north boundary line of any of the last named surveys, nor did he put in any of the north-east or north-west corners of those surveys; that he did not run any of the east and west boundary lines of those surveys; that Powell ran the west boundary line of surveys Nos. 62, 63, 64, 65, in block 5, Texas and Pacific Railway company land, established their corners along that line; that he did not run the

east boundary line of any of the surveys, or put in any of their corners along that line.

2. That W. C. Powell was on the ground and established the corners of 18, 17, 16, in block 4, Texas and Pacific Railway company, and also established the south-west and south-east corners of survey 15, in block 4, Texas and Pacific Railway company; that, commencing at the north-west corner of survey 16, block 4, he ran to the north-east corner of survey No. 6, block 5, and no further northward on the east boundary line of survey 15, block 4; that he did not run any other lines or establish any other corners than those mentioned above of survey 15.

3. That Powell put in block 4, including surveys Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 13 and 14, block 4, in the controversy, at the same time that he did the surveying above mentioned in block 5, and Nos. 18, 17, 16 and 15, block 4.

4. That surveys Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13 and 14, block 4, Texas and Pacific Railway company, were paper surveys, and that Powell never ran any of the lines of those surveys or established on the ground any of their corners.

5. That in making the calls for the beginning of survey No. 1, block 4, W. C. Powell adopted the calls of the north-east corner of the Sancedo, and that in survey No. 2 he called for the witness trees of the north-west corner of the Sancedo.

5. That W. C. Powell never ran the distance from the south-west corner of the Grimes county school land No. 146, called for in survey No. 1, block 4.

6. That No. 6, block 4, of the surveys by Powell, did not call for No. 5, block 4, but did call for a corner of the Oliveras.

7. That No. 14, block 4, Texas and Pacific Railway company, did not call for No. 15, block 4, but that No. 15 called for No. 14.

8. That the corrected field notes of the defendant were made while the certificates were in the land office, without any copies thereof, and that the certificates covered different land from what the same covered under the survey of W. C. Powell.

9. That there was a quantity of land covered by field notes of plaintiff set out in petition, and lying between block 9, Texas and Pacific Railway company, and surveys 6, 7, 8, 9, 10, 13 and 14, block 4, Texas and Pacific Railway company, made by Powell in 1874, that was vacant land when plaintiff located same in 1879.

10. That original survey No. 1, block 4, and corrected survey No. 1, block 4, Texas and Pacific Railway company, did not cover the same ground or any part of the same.

11. That the north-east corner of survey No. 1, block 9, was three thousand two hundred and ten varas north of the south-west corner of survey 146, Grimes county school land, and that that survey was patented to defendant, and covers all of survey No. 1, block 4, Texas and Pacific Railway company, made by Powell in 1874.

12. That surveys Nos. 2 and 3, block 4, Texas and Pacific Railway company, were mostly covered by block 9, Texas and Pacific Railway company, patented to Texas and Pacific Railway company, and that survey No. 4, block 4, made in 1874, was partly covered by block 9, Texas and Pacific Railway company, patented to defendant.

13. That survey No. 14, block 4, made in 1874, calls for the witness trees of the south-east corner of the Ramon Ortiz.

14. That Jose Maria Sancedo, the Martina Oliveras, the Ramon Ortiz, the Lorenzo Jones, and H. Day, were about ten miles east of where the maps showed them to be in 1874 and 1875.

15. That the double mesquit tree called for as the beginning corner of survey No. 1, block 4, made by Powell, was a witness tree of the north-east corner of the Sancedo, and was about ten miles distant from where defendant located the beginning corner of survey No. 1, block 4.

Conclusions of law by the court from the above facts:

1. That the corrected field notes of defendant's survey were relocations and invalid.

2. That the original surveys of defendant Nos. 1, 2, 3, 4 and 5, in block 4, did not cover the ground where defendant claimed them to be, but being paper surveys must follow the Sancedo and Oliveras.

3. That if surveys 1, 2, 3 and 4, in block 4, were located where defendant claimed them to be, it had abandoned them by patenting them in whole or in part, by surveys 1, 8, 9, 16 and 17, block 9, Texas and Pacific Railway company.

4. That surveys 6, 7, 8, 9, 10, 13 and 14, block 4, Texas and Pacific Railway company, tied on to survey 15, block 4, which was actually surveyed by Powell, and were valid subsisting surveys covering the ground claimed by defendant.

5. That the land lying between block No. 9, Texas and Pacific Railway company, and surveys Nos. 6, 7, 8, 9, 10, 13 and 14, block 4, Texas and Pacific Railway company, was vacant land in 1879 when appropriated by plaintiff.

The court therefore found that plaintiff do have and recover of defendant the following surveys by virtue of Burr & Caswell certificate, to-wit: Nos. 4, 5 and 6, of 640 acres each, and all that land lying between block 9, Texas and Pacific Railway company, and surveys 6, 7, 8, 9, 10, 13 and 14, block 4, Texas and Pacific Railway

company; that defendant be quieted in the possession of surveys Nos. 6, 7, 8, 9, 10, 13 and 14, block 4, Texas and Pacific Railway company, as made by W. C. Powell in 1874.

*B. G. Bidwell* and *A. Stevenson*, for appellant, on validity of locations, cited: R. S., arts. 3911, 3912; 9 Tex., 84; Dallam, 257, sec. 21; 16 Tex., 570; 26 Tex., 92; 49 Tex., 555; 9 Tex., 83; 2 Tex., 70; 26 Tex., 64; 46 Tex., 285; 53 Tex., 506.

On surveys 1, 2, 3, 4 and 5, following the Sancedo and Oliveras grants, they cited: Hob. Land Law, secs. 330, 333; 10 Tex., 440; 26 Tex., 441, 470; 45 Tex., 285, 606; 50 Tex., 376.

*Rector, Moore & Thompson*, for appellee, on the exclusion of the maps, cited: R. S., arts. 2252, 2253, 2259, 3802, and 57 sub., 5.

On abandonment, they cited: Austin v. Dungan, 46 Tex., 244; Hollingsworth v. Halshousen, 17 Tex., 49; McGimsey, Gill et al. v. Ramsdale, 3 Tex., 344; Johnson v. Eldridge, 49 Tex., 507; Galt v. Galloway, 4 Peters, 337; Taylor's lessee v. Myers, 7 Wall., 23; Relocation, arts. 4563, 4564, Pas. Ann. Dig.

On location and conflicts, they cited: Anderson v. Stamps, 19 Tex., 460; Blumberg v. Mauer, 37 Tex., 4; Robertson v. Mosson, 26 Tex., 251; Phillips v. Ayres, 45 Tex., 606; Jones v. Leath, 32 Tex., 329; Waelder v. Carroll, 29 Tex., 329; Chinoweth v. Haskell's lessees, 3 Pet., 96; Wright v. Mabry, 9 Yerger, 55; Boardman v. Reed, 6 Pet., 328.

STAYTON, ASSOCIATE JUSTICE.—A further examination of the record induces us to believe that the proper disposition of this cause was not made by the judgment heretofore entered upon the report of the commissioners of appeals, and the motion for rehearing will therefore be granted.

In disposing of the case we will not attempt to follow separately the assignments of error of the respective parties, but will consider only such questions as are deemed material to the determination of this appeal.

The court below held that the surveys made by Harris in 1878 were in effect upon relocations of the certificates under the location of which surveys had been made in 1874, and that as the certificates were not in the possession of the surveyor, but in the general land office at the time the last surveys were made, the same were invalid. If the last surveys covered land which could not have been embraced in the surveys first made, under the locations on which they were made, then the holding of the court was correct. To have author-

ized the last surveys in such case, it would have been necessary, in order to embrace land therein not covered by the former surveys, to have proceeded as would have been necessary in an original appropriation of land. R. S., 3894, 3901.

If, however, the locations originally made would cover the land embraced in the surveys last made, then we are of the opinion, notwithstanding the first surveys and the land certificates had been returned to and were in the general land office, that the surveys might have been made to conform to the original location, if through mistake or inadvertence the surveyor had failed in the first instance to embrace the land located in the surveys made. Surveys made under such circumstances would be corrections, which it would be the right of the locator to have made, and he would lose no right, through the fault of the surveyor, through which the land actually located was not covered by the first surveys, unless by some act done by him some subsequent locator was induced to appropriate the land not covered by the first survey.

The original locations made by the appellant are not contained in the transcript, and it is impossible for us to tell whether any of the land embraced in the last surveys, and not embraced in the first, could legally have been covered thereby. From some of the findings of the court it is evident, unless the first surveys were made in utter disregard of the locations, that the land embraced in some of the tracts as last surveyed could not have been covered by the locations, while, as to other tracts, the land in whole or in part must have been embraced.

If we are to presume that the first surveys were made in accordance with the locations, and in the absence of evidence to the contrary this ought to be presumed, then it is evident that parts of surveys 2, 3, 4 and 5, as originally made, are covered by surveys made for the appellee. The court below held that these surveys, as well as survey No. 1, had been abandoned by the defendants, causing them to be patented in whole or in part to itself, under locations and surveys made in another block which was contiguous. We do not see that this would follow. If by mistake different certificates belonging to defendant were in part located or surveyed on the same land, and some of them were patented, we do not see that this could affect the right of the defendant to hold the land, not so patented, by virtue of a valid location and survey.

Covering a part of a survey with two certificates, and accepting a patent under one of them, in the absence of some further fact tending to show an intention not to claim that part of the survey not covered

by the patent, cannot operate as an abandonment of the location and survey in so far as the land contained in it and not covered by the patent is concerned.

The court below held that, as survey No. 1 called for the same bearing tree as did the Sancedo grant, and as survey No. 2 calls for the same objects for one of its corners as are called for in the Oliveras grant, survey Nos. 1, 2, 3, 4 and 5, which call for each other, must be governed in their locations by the true locations of the Sancedo and Oliveras grants. These grants are not called for by name in either of the surveys above named, but it is manifest that two corners called for were corners of the Sancedo and Oliveras grants, which the surveyor, who did not make actual surveys, supposed would be found at the places at which, by calculation, he intended to establish corners of surveys Nos. 1 and 2.

At the time the surveys in question were made, the maps then in use showed the Sancedo and Oliveras grants to be situated at points which would have made the calls for objects at their corners proper for calls for corners of surveys Nos. 1 and 2, by course and distance from the south-west corner of survey No. 146, patented in Grimes county as a part of its school land; but it appears that the Sancedo and Oliveras grants are actually located about ten miles east of the place they were supposed to occupy in 1874. This being shown, and it appearing that there was no actual survey of the tracts called surveys 1, 2, 3, 4 and 5, we are of the opinion that the locality of these tracts does not necessarily depend upon the true localities of the Sancedo and Oliveras grants, objects of the corners of which were evidently called for by mistake. Boon v. Hunter, 62 Tex., 582, and cases cited.

Tract No. 1 calls to "begin at a stake and mound, nineteen hundred varas north, fifteen degrees west, from the south-west corner of a one-league survey No. 146, made in the name of Grimes county school land, a double mesquite tree bears east seventeen varas." This tree is the same in description and position, as to bearing from corner as called for, as a bearing to the north-east corner of the Sancedo grant, and the four other tracts numbered 2, 3, 4 and 5, in succession, call for the tracts preceding in number. If the south-west corner of survey No. 146 was actually established on the ground, or if it can from other calls be established, then the true position of tracts Nos. 1, 2, 3, 4 and 5 may be established.

It seems not to be denied that there is land covered by the locations of the appellee lying between block 9 and block 5, not covered by either the first or second sets of field notes made for the appellant,

and we are asked to here render a judgment giving to each party, by metes and bounds, the land to which they are entitled. This cannot be done; in fact, such was the difficulty of this question, that this is given as a reason why the pleadings do not set out the true boundaries to which each party may be entitled in some of the tracts.

We cannot know from the findings how much, if any, of the tracts numbered 1, 2, 3, 4 and 5, is covered by surveys patented to the appellant in block No. 9; nor how much land not covered by appellant's claims, but covered by the surveys of appellee, lies between block 9 and block 5; and from the maps before us, the field notes of the respective parties will in some instances conflict, whether we consider the one or the other of the sets of field notes made for the appellant. We apprehend that in the present condition of the field notes, patents will most probably not issue to either party. Besides the rights of the parties are more likely to be correctly adjusted after proper inquiry is made as to what extent the last field notes made for the appellant were authorized under the locations, or entries. These are sufficient reasons why a judgment ought not to be rendered here.

The commissioner of the general land office may give certified sketches from the maps in his office, and in many cases such sketches are admissible; but the sketches offered by the appellee did not purport to be copies of maps in use or on file in the land office, but purported to be made up from field notes with a view to proving thereby that the several tracts of land were in fact situated as they are represented thereon. Such would be but the opinion of the draughtsman who made the sketches, and such matters are not admissible. The general sketches are certified to show the *correct positions* of the several tracts of land shown thereon, which fact is sought to be established by the further certificate that the sketches were compiled from the field notes on file in the office.

An examination of these several sketches shows that the positions of several of the tracts sketched and certified on our sketch to be correctly located, on others are certified to be correctly located in other places. The commissioner evidently did not intend, and was not empowered, to make such certificates as were made, and if they had been admitted were calculated to mislead. The judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered Dec. 8, 1885.]