McFADDIN v. WHITE et al. (No. 389.)

(Court of Civil Appeals of Texas. Beaumont. April 15, 1919. On Rehearing, July 5, 1919.)

1. BOUNDARIES ⊚═25—PRIOR SURVEYS—DEFINITELY FIXED AND LOCATED SURVEYS CONTROLLING OVER UNCERTAIN LOCATIONS.

In an action of trespass to try title, where the older surveys on the north were definitely fixed and located, they control the location of the land in question as against uncertain locations of the southern tier of surveys.

2. BOUNDARIES ⊚═36(5), 37(3) — CORNERS—ORIGINAL AND CORRECTED FIELD NOTES—ERASURE—EVIDENCE.

In an action of trespass to try title, where the court had before it the original and corrected field notes, and calls for a common corner had been erased from original field notes, it was the duty of the court in locating such corner to consider the original field notes, it appearing that the surveyor had made only one trip to the land, and the judgment of the court finding that the original field notes and the corrected field notes included the same land *held* amply sustained.

3. APPEAL AND ERROR ⊚═1010(1)—REVIEW—QUESTIONS OF FACT.

Where there are sufficient facts and circumstances of record to sustain the judgment appealed from, it must be affirmed.

4. BOUNDARIES ⊚═37(1)—SURVEYS —INTENTION OF SURVEYOR, OF STATE, AND PARTIES.

In an action of trespass to try title involving the question of surveys, facts of record *held* sufficient to sustain the judgment of the court that it was the intention of the surveyor and of the state in issuing patents and of the parties accepting the same to include in two certain surveys all of the land as shown on the official map.

5. BOUNDARIES ⊚═37(1)—SURVEYS — ACTUAL SURVEY—EVIDENCE.

In an action of trespass to try title involving the question of surveys, facts *held* sufficient to sustain an actual survey rather than a paper survey, had the trial court so found.

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by R. M. White and others against W. P. H. McFaddin, in trespass to try title. Judgment for plaintiffs, and defendant appeals. Judgment affirmed.

C. W. Howth, W. D. Gordon, and E. E. Easterling, all of Beaumont, for appellant.

Lipscomb, Gordon & Lipscomb, of Beaumont, for appellees.

WALKER, J. This action was brought by the appellees against the appellant in the ordinary form of trespass to try title, seeking a recovery of the W. J. Bryan survey in Jefferson county. Appellant answered by general demurrer and general denial and plea of not guilty. The cause was submitted to the court without the intervention of a jury. The court found in favor of appellees, and entered judgment that appellees recover of and from appellant the Bryan survey, describing it as described in their petition. The court filed no findings of fact

and conclusions of law. From the record we find the following facts:

(1) In October, 1882, James Ingalls, county surveyor of Jefferson county, surveyed the Pannell survey of 1,280 acres, by virtue of veteran donation certificate No. 911, calling for 1,280 acres, and the W. J. Bryan survey of 1,125 acres, by virtue of veteran donation certificate No. 946. This certificate also called for 1,280 acres. These two surveys were located in the southeastern portion of Jefferson county on a block of vacant land bounded, as shown by the official maps of that date, on the north by Texas & New Orleans sections 264, 263, 346, and 347; on the east by the E. P. Gregg No. 2; on the south by T. & N. O. sections 359 to 366, inclusive, and on the west by T. F. Adams No. 1 and S. J. Erwin No. 2. As a part of this finding we give the following map showing the location of the Bryan and Pannell surveys, together with the surrounding surveys called for in their field notes:

(2) The Pannell field notes were dated on the 8th of October, and the Bryan on the 6th of October. The work done by Ingalls on these two surveys was done at one and the same time. He made only one trip to these surveys, and the different sets of field notes made by him were all based on this work.

(3) The original field notes of the Sarah A. Pannell are as follows:

"Beginning at the N. E. corner of S. E. Erwin's 1,280-acre survey No. 2; thence south with her east line and the east line of T. F. Adams, 2,827 varas to his S. E. corner (on the above map this corner being on the north line of section 366; thence east with the different calls of sections 365, 364, 363, and 362 to a point on the north line of section 362); thence north 975 varas to a post for corner; thence west 257 varas to S. E. corner of section No. 263 at 3,847 varas to the beginning."

(4) The original field notes of the W. J. Bryan are as follows:

"Beginning at a post at the S. E. corner of a 1,280-acre survey made for Mrs. S. A. Pannell (thence east calling for sections 361, 360 and 359); thence 2,659 varas to the corner of E. P. Gregg; thence north 1,575 varas to a post for a corner; thence west at 3,219 varas to the corners of sections Nos. 262, 263, and 346; thence south on the east line of No. 263, 1,900.8 varas to the north line of Mrs. S. A. Pannell; thence east on her north line 257 varas to her N. E. corner; thence south on her east line 975 varas to the beginning."

These original field notes were rejected by the land office. Thereupon the said Ingalls, as county surveyor, corrected the original field notes by erasing therefrom that portion of the original field notes beginning with "sections 262, 263, and 346; thence south on the east line of No. 263 at 1,900.8 varas to the north line of Mrs. S. A. Pannell; thence east on her north line 257 varas," and inserted in lieu thereof the following calls:

"Thence south at 1,900 varas to the north line of Mrs. Pannell; thence east with her north line 260 varas to her N. E. corner; thence south on her east line 975 varas to the beginning."

On these corrected field notes the patent issued. Plaintiffs in their petition describe the land practically as described in the original field notes, as above, and the judgment followed the field notes in the petition.

(5) As shown by the field notes, the Sarah A. Pannell calls to begin at the southeast corner of the Erwin survey No. 2; the Erwin No. 2 calls to begin at the northeast corner of the T. F. Adams survey No. 2; the T. F. Adams calls to begin at the southeast corner of section 312.

(6) All these surveys surrounding the Bryan and Pannell, including all the tier of T. & N. O. surveys on the south and on the north, were made by James Ingalls. The T. & N. O. surveys on the south are located by beginning at a well-recognized point at Sabine Pass, some 15 miles from the Pannell and Bryan, and following course and distance as called for in the field notes. After leaving the old established corners near Sabine Pass, there are no marked or recognized corners for any of this southern tier of surveys. The northern tier of surveys is defi-

nitely located on the ground, their corners are easily found, and are located by and from well-established and well-recognized landmarks, there being no difficulty in locating this northern tier of surveys, their location being as easily determined as the location of any other well-recognized subdivisions of the county, and especially is this so of the Erwin, called for by the Pannell, and of the Adams, called for by the Erwin, and of section 312, called for by the Adams.

(7) After Ingalls surveyed these two surveys in 1882, one Green, a state surveyor, resurveyed them, and also the surrounding surveys, and Rachford, county surveyor of Jefferson county, also resurveyed them. Rachford made the east line of the Pannell 536 varas, instead of 950, as made by Ingalls. Green and Rachford both called for section 263 on the north and the T. & N. O. sections on the south.

(8) On the report of this survey as made by Ingalls, the land office platted the Pannell and Bryan, showing them to occupy all of the vacant block shown by the old maps, and locating them as described in plaintiffs' petition. The holders of the Bryan and Pannell have claimed their boundaries as shown on the map.

(9) In 1914 the appellant, thinking there was a vacancy between the northern boundary line of the Bryan and the south boundary line of sections 346 and 347, had the present county surveyor to resurvey the Bryan. He began at the old recognized corners around Sabine Pass, and located the southern tier of T. & N. O. surveys by course and distance; then he located the Pannell and the Bryan in relation to the southern tier of surveys, disregarding all the calls for the northern tier of surveys. By so doing he reported a vacancy of about 900 acres between the northern boundary line of the Bryan and the southern boundary line of sections 346 and 347. On this report the land office patented to appellant sections 25 and 26 between the northern boundary line of the Bryan and the southern boundary line of sections 346 and 347. In order to find this vacancy, the county surveyor has reported a vacant strip something like a mile wide, beginning at a point near Sabine Pass and extending down north of the southern tier of surveys. He does this, although Mr. Ingalls, in locating the southern tier of surveys, called for the northern tier of surveys. By the judgment rendered by the trial court he found against this theory of vacancy advanced by appellant, and located the land as shown on the map here referred to, and as described by plaintiffs in their petition.

## Conclusions of Law.

[1] 1. As the Pannell calls to begin with the Erwin, and as the Erwin calls to begin

with the Adams, and as the Adams calls to begin with section 312, and as these older surveys are definitely located and fixed on the ground, and these beginning corners are easily found, it was proper for the trial court to locate the beginning corner of the Pannell in the north, as called for in its patent. The surveys on the north, being definitely fixed and located, control the location of the Pannell as against the uncertain location of the southern tier of surveys. Boon v. Hunter, 62 Tex. 582; Lilly v. Blum, 70 Tex. 704, 6 S. W. 279; T. & P. Ry. Co. v. Thompson, 65 Tex. 186; Sanborn v. Gunter, 84 Tex. 273, 17 S. W. 117, 20 S. W. 72; Robinson v. Doss, 53 Tex. 506.

Locating the Pannell by the calls for the northern tier of surveys, then the southeast corner of the Pannell is located as claimed by appellees. Taking the southeast corner of the Pannell as the beginning corner of the Bryan, and locating the Bryan in relation thereto, following course and distance, no vacancy will exist between the north boundary line of the Bryan and the south boundary line of sections 346 and 347, and the common corner of 262, 263, and 346 will be the northwest corner of the Bryan. The same principles of law sustaining the judgment of the court in locating the Pannell in relation to the northern tier of surveys will sustain the court in disregarding the calls for the southern tier of surveys, and, if necessary for the true location of the Bryan, to disregard the call for the southwest corner of the Gregg and locate the Bryan as herein indicated.

[2] 2. While in correcting the field notes of the Bryan, County Surveyor Ingalls erased from his original field notes the calls for the common corner of sections 263, 262, and 346, and the call for the east line of 263, it was the duty of the court, in determining the location of the northwest corner of the Bryan, to consider the original field notes as made by Ingalls, it appearing that Ingalls made only one trip to the land, and that all his work in connection with these different sets of field notes was based on the original report made by him, and as the corrected field notes differ from the original field notes only in calls for the common corner of 263, 262, and 346, and the east line of 263, the judgment of the court in finding that the original field notes and the corrected field notes include the same land is amply sustained.

In Robinson v. Doss, supra, the trial court had before it the original field notes, and the corrected field notes, showing erasures similar to the erasures in this case. The erasures were disregarded, and the land was located with reference to the original field notes, as if no erasures had been made.

[3] 3. The distance between the northern line of the southern tier of surveys and the southern line of sections 346 and 347 was a question of fact to be determined by the trial court, and there are sufficient facts and circumstances in the record to sustain this judgment.

[4] 4. Conceding that Ingalls and the other surveyors were mistaken in the distance between the northern line of the southern tier of surveys and the southern line of sections 346 and 347, the facts in this record are sufficient to sustain the judgment of the court that it was the intention of Ingalls in surveying this land, of the state in issuing the patents, and of the parties in accepting the same, to include in the Bryan and Pannell all of the land as shown on the above map.

[5] We have discussed this case on the theory that the survey as originally reported by Ingalls was a paper survey in most part. However, we would add, if necessary to sustain the judgment of the trial court, that the facts are sufficient to sustain an actual survey, had the trial court so found.

Finding no error in this record, this case is in all things affirmed.

### On Rehearing.

Appellant's motion for rehearing in this case has had our most careful consideration. In addition to able written arguments and briefs, we permitted oral argument on submission of this motion. We believe our original disposition of this case is correct, and appellant's motion for rehearing is in all things overruled.

In overruling this motion for rehearing, on our own motion we find the following facts, in addition to those stated in the original opinion:

(1) That the appellees own what is known as the W. J. Bryan survey, which was located contemporaneously with the Sarah Pannell survey, also owned by the appellees, and that the said W. J. Bryan survey was located by virtue of a veteran donation certificate No. 946 issued by the land office of Texas in 1882, which authorized the location of 1,280 acres of unappropriated public domain, and that the field notes in the original patent of the Bryan survey calling for 1,225¼ acres of land are as follows:

"Beginning at a post at the S. E. corner of a 1,280-acre survey made for Mrs. S. A. Pannell; thence east 400 vrs. to the west line of Sec. 361; thence north at 443 vrs. to its N. W. Cor.; thence east 950 vrs. to the west line of No. 360; thence north 443 vrs. to its N. W. Cor.; thence east 950 vrs. to the west line of No. 359; thence north 443 vrs. to its N. W. Cor.; thence east 659 vrs. to the Cor. of E. P. Gregg; thence north 1,575 vrs. to post for Cor.; thence west at 3,219 vrs. to Cor.; thence south at 1,900 vrs. to north line of Mrs. Pannell; thence east on her north line 260 vrs. to her N. E. cor.; thence south on her east line 975 vrs. to the place of beginning."

(2) The court further finds that within the above field notes is contained 1,225¼ acres.

(3) The court further finds that the original field notes made by the county surveyor of Jefferson county in locating said land are as follows:

"Beginning at a post at the S. E. corner of a 1,280-acre survey made for Mrs. S. A. Pannell; thence east 403 vas. to the west line of section No. 361; thence north at 443 vas. to its N. W. corner; thence east 950.4 vas. to the west line of No. 360; then north 443 vas. to its N. W. corner; thence east 950.4 vas. to the west line of No. 359; thence north 443 vas. to its N. W. corner; thence east 656 vas. to the corner of E. P. Gregg; thence north 1,546 vas. to a post for a corner; thence west at 3,217 vas. to the corner of sections Nos. 262, 263, and 346; thence south on its east line of No. 263 at 1,900 vas. to the north line of Mrs. S. A. Pannell; thence east on her north line 257 vas. to her N. E. corner; thence south on her east line 975 vas. to the beginning."

(4) The court further finds that the field notes in the handwriting of the county surveyor of Jefferson county, James Ingalls, in a book found at the office of the county surveyor of Jefferson county, were corrected in the handwriting of James Ingalls as follows:

"The State of Texas, County of Jefferson.

"Field notes and plot of a survey of 1,216 acres of land made for Wm. J. Bryan by virtue of veteran Donation No. 946 for 1,280 acres of Land, Issued to said W. J. Bryan by W. C. Walsh, commissioner of the General Land Office at Austin, Texas, April 26th, 1821. Said survey is in Jefferson County in Salt Bayou marsh & About —— miles S. —— W. from Beaumont. Beginning at a post in the S. E. corner of a 1,280-acre survey made for Mrs. S. A. Pannell. Thence East 400 vas. to the west line of section No. 361. Thence North at 443 vas. to its N. W. corner. Thence East 950.4 vas. to the west line of No. 360. Then North 443 vas. to its N. W. corner. Thence East 950.4 vas. to the west line of No. 359. Thence North 443 vas. to its N. W. corner. Thence East 659 vas. to the corner of E. P. Gregg. Thence North 1,575 vas. to a post for a corner. Thence West at 3,219 vas. to the corner of ~~Sections Nos. 262, 263 & 346. Thence South on the 1883 corner East line of No. 263 at 1900 vas. to the North~~
                                        est
~~line of Mrs. S. A. Pannell. Thence East on her North line 257 vas. to her N. E. corner.~~ Thence South on her East line 975 vas. to the beginning.

"Variation 9 deg. 15′ E.

"Surveyed October 6th, 1882.
                    "James Ingalls, Surveyor.
"Jas. Garvin,
"Claud Eastham, C. C.

"Thence south at 1900 vas. to the north line of Mrs. Pannell; thence east with her north line 260 vas. to her N. E. corner; thence south on her east line 975 vas. to the beginning."

(5) In our original opinion we said:

"We have discussed this case on the theory that the survey as originally reported by Ingalls was a paper survey in most part. However, we would add, if necessary to sustain the judgment of the trial court, that the facts are sufficient to sustain an actual survey had the trial court so found."

This case was tried by the judge without a jury, and he filed no findings of fact and conclusions of law. We have carefully reviewed all the testimony in this record on the issue of how this land was surveyed. We do not believe it is necessary for a decision of this case to make a definite finding on this issue, that is, whether the Bryan survey was a constructive or office survey, or whether it was actually surveyed on the ground, but we reaffirm the statement in our original opinion that in our judgment the facts are amply sufficient to sustain a finding that the survey was made on the ground, as indicated in the surveyor's report.

(6) As supplementing our ninth finding of fact in our original opinion, in 1917, on reports made by the county surveyor of Jefferson county, the general land office of Texas recognized a vacancy between the north line of the Bryan survey and the south line of sections 346 and 347, and patented this vacancy to the appellant, W. P. H. McFaddin, which patents are as follows:

"No. 511.                         Vol. 52.
    "In the Name of the State of Texas:

"To all to whom these presents shall come, know ye, I, Jas. E. Ferguson, Governor of the state aforesaid, by virtue of the power vested in me by law, and in accordance with the laws of said state in such case made and provided, do by these presents grant to W. P. H. McFaddin, his heirs or assigns, forever, six hundred and seventeen (617) acres of land, situated and described as follows:

"In Jefferson county, known as Sur. 25, Blk. No. 4, W. P. H. McFaddin S. F. 11282, about 28 miles S. 10 deg. W. from county site, bought and fully paid for under the laws regulating the sale of public free school land, beginning at a stake in mount and 4 pits mkd. N. E. 25 on the S. line of T. & N. O. Sur. No. 347, from which Pipkin's ranch house brs. N. 2 deg. 50′ E. Thence S. 772 vs. enter the N. bank of Star Lake, 1,000 vs. the N. edge of a pt. of land and at 1,200 vs. the S. edge of same pt. of land and enter Star Lake, 1,512 vs. the N. W. corner of E. P. Gregg Sur. No. 2, 1,797 vs. the N. E. Cor. of W. J. Bryan Sur. for the S. E. Cor. of this survey in Star Lake. Thence W. along the N. line of Bryan Sur. at 1,100 vs. leave Star Lake 1,938.7 vs. a stake in marsh for S. W. cor. of this sur. Thence N. 5 vs. the S. bank of a bayou, 300 vs. the N. bank of another bayou which joins the aforesaid bayou at this place, 1,500 vs. the S. bank of Star Lake, and at 1,797 vs. set a stk. in S. line of Sur No. 346 and in the W. bank of Salt Bayou for the N. W. Cor. of this survey. Thence E. 120 vs. the east bank of Salt Bayou wch brs. N. and E. 800 vs. a chain of lakes running north, 980 vs. to the S. W. Cor. of

Sur. No. 346 and S. W. Cor. Sur. 347, 1,838.7 vs. to the place of beginning. Whatever minerals may be in the land herein described are expressly reserved to the public free school land of Texas.

"Hereby relinquishing to him the said W. P. H. McFaddin and his heirs or assigns forever all the right and title in and to said land heretofore held and possessed by the said State, and I do hereby issue this letter patent for the same.

"In testimony whereof I have caused the seal of the state to be affixed as well as the seal of the general land office. Done at the city of Austin on the twenty-fifth day of April in the year of our Lord one thousand nine hundred and seventeen.

"[Seals.]    Jas. E. Ferguson, Governor.
"J. T. Robison,
"Commissioner of the General Land Office."

Indorsed:

"Patent. State of Texas to W. P. H. McFaddin. Filed for record 20 day of July, 1917, at 1:40 o'clock p. m. J. R. Jefferson, Clerk County Court, Jefferson County, Texas, by V. P. Giddings, Deputy.

"The State of Texas, County of Jefferson.

"I, J. R. Jefferson, clerk of the county court in and for said county, do hereby certify that the foregoing instrument of writing dated the 25 day of April, 1917, with its certificate of authentication, was filed for record in my office the 20 day of July, 1917, at 1:40 o'clock p. m., and duly recorded the 24 day of July, 1917, at 9:40 a. m., in deed records of said county in Vol. 167 on page 42. Witness my hand and seal of the county court of said county, at office in Beaumont the day and year last above written. J. R. Jefferson, Clerk County Court, Jefferson County, by H. Carls, Deputy."

(7) We further find that appellee paid taxes only on 1,225¼ acres in the Bryan survey until about ———, and since said time they have rendered the Bryan survey as containing ——— acres, and before this time, though it had been surveyed out, appellees believed there was an excess in the Bryan survey.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes